## HAMMERSTEIN v. LYNE.

(District Court, W. D. Missouri, W. D. November 18, 1912.)

No. 3,972.

**1.** CITIZENS (§ 11*)—NATURE OF RELATIONSHIP—"CITIZENSHIP."

Citizenship in the United States is a dual relation, national and state. In so far as it relates to the national government, it embraces all persons within the fourteenth amendment of the federal Constitution, providing that all persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the state wherein they reside. Citizenship of a state, however, means residence by a citizen of the United States in a state with an intention of remaining.

[Ed. Note.—For other cases, see Citizens, Cent. Dig. § 18; Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 2, pp. 1175, 1176.]

**2.** COURTS (§ 307*)—FEDERAL COURTS—JURISDICTION—"CITIZENSHIP."

Citizenship as used in Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1901 [U. S. Comp. St. Supp. 1911, p. 135]) § 24, with reference to the jurisdiction of the courts of the United States, means permanent residence in a state, with an intention of remaining, since to give jurisdiction to the federal courts the suit must be between citizens residing in different states, or between a citizen and an alien.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 850–854; Dec. Dig. § 307.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

**3.** COURTS (§ 307*)—FEDERAL COURTS—JURISDICTION—"CITIZENSHIP."

"Citizenship," essential to confer federal jurisdiction, cannot depend entirely on birth, but may be changed from one state to another, or to a foreign country, by change of residence.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 850–854; Dec. Dig. § 307.*]

**4.** COURTS (§ 307*)—FEDERAL COURTS—JURISDICTION—CITIZENS.

Defendant, having been born in Missouri, in 1907 disposed of all her property and removed with her mother to France to study music. She remained there for three years, visiting the United States in August, 1910, when she sang under complainant's management in New York and Philadelphia, and made a brief visit to her grandparents in Kansas City. She returned to Paris, where she remained until September 20th of that year, when she took up her residence in London, remaining there until September 12, 1912, when she came to the United States to give a concert in Kansas City. She testified that, when she left in 1907, she did so intending to change her domicile and take up a residence abroad, and that when she went to London it was with the intention of remaining there for an indefinite period, and that she had not then, nor at any time since her departure, any intention of returning to Missouri. *Held*, that defendant was not a citizen of Missouri, so as to confer jurisdiction on a federal court sitting in that state of a suit brought against her by complainant, a citizen of New York.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 850–854; Dec. Dig. § 307.*

Effect of change of domicile on the question of diverse citizenship, see note to Shipp v. Williams, 10 C. C. A. 251.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. COURTS (§ 321*)—FEDERAL COURTS—JURISDICTION—FOREIGN CITIZEN OR SUBJECT.

Defendant, a citizen of Missouri, having left that state to study music abroad, with an intention of thereafter residing abroad and not returning to the United States, finally took up her permanent residence in London, from whence she came to the United States while under a singing contract with complainant to deliver a concert in Kansas City. *Held* that, since citizenship of the United States does not involve residence, but is the antithesis of alienage, defendant's mere residence abroad, even with an intention never to return, without any act of naturalization or step in that direction, did not constitute an act of expatriation, so as to terminate her citizenship of the United States, and render her a foreign citizen or subject, within Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091 [U. S. Comp. St. Supp. 1911, p. 135]) § 24, conferring jurisdiction on federal courts of suits between citizens of a state and foreign states, citizens, or subjects.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 845, 847–849; Dec. Dig. § 321.*

For other definitions, see Words and Phrases, vol. 3, p. 2883.]

In Equity. Suit by Oscar Hammerstein against Felice Lyne. On plea to the jurisdiction. Sustained.

October 12, 1912, complainant exhibited his bill of complaint, alleging that he is a citizen and resident of the state of New York; that the defendant is a citizen and resident of the Western division of the Western district of Missouri; that the amount involved herein, exclusive of interest and costs, exceeds the sum of $3,000; that the defendant is under contract with the complainant, by the terms of which the defendant is engaged in her capacity as a soprano singer for the season of 1912 and 1913; that by said contract, among other things, it is provided that after the close of each season the defendant agrees to place herself under the sole management and direction of the complainant, or his representative, allowing him one-half of the receipts obtained from any musical or operatic production in which she may participate, and, further, that the defendant shall not sing under any other management or direction, except that of the complainant, during the existence of the agreement; that on the 7th day of October, 1912, the defendant did appear in a musical production at Kansas City, Mo., and did receive therefor a sum of money, the exact amount of which is to the complainant unknown, and one-half of which sum of money was received by the defendant and is held by her in trust for the use and benefit of the complainant as his property; that the defendant denies this claim of the complainant, and is disposing of said fund as her own property, is about to leave the state of Missouri, and has refused to account to said complainant for any portion of said sum; that defendant is threatening to, and will, unless restrained and enjoined by the order of this court, continue to perform under her own management and under the management of others than the complainant at other places in the United States and elsewhere in musical and operatic productions, to the damage of complainant; that complainant can have no adequate relief, except in this court—and prays for disclosure and discovery of all the matters aforesaid, and that a writ of injunction issue, enjoining the defendant from appearing in any manner of musical or operatic production, except under the management of the complainant, or in lieu thereof that an order of mandatory injunction, directing the defendant to deposit in this court, pending this suit, for the use and benefit of complainant, one-half of the receipts obtained by her from any musical or operatic production in which she may participate, and enjoining the defendant from in any manner disposing of such portion of the fund already received by her as may belong to the complainant, to the extent of at least one-half thereof; that the same be deposited in the registry of this court to await the event of this suit. A preliminary restraining order was issued, and upon the return day thereof

the defendant filed her plea to the jurisdiction of the court, upon the ground stated that the defendant is not, and was not at the time of the institution of the above cause, a citizen or inhabitant of the state of Missouri, as set forth in the bill, but that she is and was at said time a citizen of the United States, and a resident of London, England. To this plea complainant made replication, and upon the issue thus framed proofs were taken, reduced to writing, and filed.

From these proofs it appears that the defendant was born at Slater, in this division and district of Missouri; that she subsequently lived in Kansas City with her parents; that on or about August 12, 1907, she disposed of all her property and effects, except such as she took with her, and left Kansas City, with her mother, for Paris, France, for the purpose of completing her musical education and entering upon an operatic career; that she remained in Paris three years, revisiting this country in August, 1910, during which time she sang under the management of the complainant in New York and Philadelphia, and made a brief visit to her grandparents in Kansas City; that she returned to Paris, where she remained until the 20th of September of the same year, and then she went to London and took up her residence there, where she still lives, her address being No. 1 Hay Hill, Berkely Square; that she remained there continuously until September 12, 1912, when she sailed for the United States for the purpose of giving the concert in Kansas City referred to in the bill of complaint. On the occasion of her first visit, she signed, at the port of New York, a nonresident's declaration and entry, declaring herself to be a resident of Paris. On her second visit she signed a similar nonresident's declaration and entry, declaring herself to be a resident of England. Her mother has been with her continuously, and her father now resides in Pennsylvania. None of the family have either home or property in the state of Missouri, but have relatives living in Kansas City. The defendant declares that, when she left Kansas City in August, 1907, she did so with the purpose of changing her domicile, and with no intention of returning here to live. On the contrary, it was her intention to take up a residence abroad in the pursuit of her chosen profession; that she first established a residence in Paris, and afterwards her present residence in London, with the intention of remaining there for an indefinite period, and that such should be her principal and permanent residence; that she has not now, and has not had since her departure, any intention of returning to Missouri. She has not, however, taken any steps to alter her status as a national citizen of this country, nor is it her intention so to do. On the contrary, she explicitly asserts that she is, and considers herself to be, a citizen of the United States. Under this state of facts, defendant submits that this court has no jurisdiction over her in this case. The complainant contends that she is still a citizen of the state of Missouri, and a resident of the Western division of the Western district thereof.

New & Krauthoff, of Kansas City, Mo., and House, Grossman & Vorhaus, of New York City, for complainant.

Jay Read and Halbert H. McCluer, both of Kansas City, Mo., for defendant.

VAN VALKENBURGH, District Judge (after stating the facts as above). The Constitution of the United States (article 3, § 2), provides:

"The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made or which shall be made under their authority; to all cases affecting ambassadors, other public ministers, and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states; between a state and citizens of another state; between citizens of different states; between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects."

This comprehends and limits the jurisdiction of the national courts. Defining the jurisdiction of the District Courts, the Judicial Code (chapter 2, § 24) provides:

"The District Courts shall have original jurisdiction as follows:

"First. Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue, or between citizens of the same state claiming lands under grants from different states; or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different states, or (c) is between citizens of a state and foreign states, citizens or subjects."

The jurisdiction of this court must exist, if at all, because the case at bar belongs to one of the classes named, and more specifically to "b" or "c" above described. The complainant is admitted to be a citizen of the state of New York. Then, to confer jurisdiction upon this court, in any view, the defendant must be a citizen of some other state, or she must be an alien. It is not and cannot be claimed that she is a citizen of any state other than Missouri.

[1] It is first necessary to inquire whether, upon the testimony before us, the defendant can be held to be a citizen of any state, and in determining this we must remember that the citizenship with which we are now concerned is that contemplated by the Judiciary Act. Citizenship in this country is a dual one—national and state—and the distinction between national and state citizenship has been frequently pointed out.

The first section of the fourteenth article of amendment to the federal Constitution provides that:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside."

Concerning the definition of citizenship therein contained, the Supreme Court of the United States has said:

"The distinction between citizenship of the United States and citizenship of a state is clearly recognized and established. Not only may a man be a citizen of the United States without being a citizen of a state, but an important element is necessary to convert the former into the latter. He must reside within the state to make him a citizen of it, but it is only necessary that he should be born or naturalized in the United States to be a citizen of the Union. It is quite clear, then, that there is a citizenship of the United States, and a citizenship of a state, which are distinct from each other, and which depend upon different characteristics or circumstances in the individual." Slaughterhouse Cases, 16 Wall. 36, 73, 74, 21 L. Ed. 394.

[2] In Cooper v. Galbraith, No. 3,193, 6 Fed. Cas. 473, Mr. Justice Washington said:

"Citizenship, when spoken of in the Constitution in reference to the jurisdiction of the courts of the United States, means nothing more than residence. The citizens of each state are entitled to all the privileges and immunities of citizens in the several states; but to give jurisdiction to the courts of the United States, the suit must be between citizens residing in different states, or between a citizen and an alien."

Of course, the residence here spoken of means permanent residence animo manendi. This appears from his language used in Butler v. Farnsworth, No. 2,240, 4 Fed. Cas. 902, wherein he says:

"In order to give jurisdiction to the courts of the United States, the citizenship of the party must be founded on a change of domicile and permanent residence in the state to which he may have removed from another state. Mere residence is prima facie evidence of such change, although, when it is explained and shown to have been for temporary purposes, the presumption is destroyed."

Further discussing the question here involved, the learned Justice says:

"With respect to the immunities which the rights of citizenship can confer, the citizen of one state is to be considered as a citizen of each and every other state in the Union. But the privilege of suing in the tribunals of the nation cannot possibly depend upon the fact of general citizenship, because, if it did, the jurisdiction of those tribunals would extend to every case where citizens were parties, since a citizen of Pennsylvania, suing a citizen of the same state, might truly allege that he is himself a citizen of any other state, and that the defendant is a citizen of the state in which the suit is brought. Or every case, in which citizens are parties, might, by the same course of argument be excluded, since, it being equally true that a citizen of new Jersey, who is plaintiff, is also a citizen of Pennsylvania, the Pennsylvania defendant might plead that the plaintiff and defendant are citizens of the same state. It is plain, therefore, that citizenship, in relation to the federal judiciary, cannot be that which has just been referred to, but must be of that kind which identifies the party with some particular state, of which he is a member. The theory of this provision in the Constitution is the danger of partiality in the state tribunals, where the suit is between a member of the political family, where the suit is instituted, and a stranger. Citizens, in reference to federal jurisdiction, are mentioned as in opposition to each other. It is a citizen of one state, and a citizen of another state in which the suit is brought, which can never be explained by a general citizenship, which confounds all distinction, and admits of no opposition. The only rational construction of the Constitution, in relation to federal jurisdiction, is to limit it to cases where the suit is between the resident citizens of different states, or where an alien is a party."

Still further developing this idea, Mr. Justice Story, in Case v. Clarke, No. 2,490, 5 Fed. Cas. 254, said:

"To constitute a person a citizen of a state, so as to sue in the courts of the United States, he must have a domicile in such state."

In Marks v. Marks (C. C.) 75 Fed. 321, 322, the rule is thus stated:

"To constitute citizenship of a state in relation to the Judiciary Act requires, first, residence within such state; and, second, an intention that such residence shall be permanent. In this sense, state citizenship means the same thing as domicile in its general acceptation. The act of residence does not alone constitute the domicile of a party, but it is the fact of residence, accompanied by an intention of remaining, which constitutes domicile. The distinction between domicile and mere residence may be shortly put as that between residence animo manendi and residence animo revertendi."

In Sharon v. Hill (C. C.) 26 Fed. 337, 342, it was said:

"Citizenship is a status or condition, and is the result of both act and intent: * * * The residence and the intent must coexist and correspond; and although, under ordinary circumstances, the former may be sufficient evidence of the latter, it is not conclusive, and the contrary may always be shown; and when the question of citizenship turns on the intention with

which a person has resided in a particular state, his own testimony, under ordinary circumstances, is entitled to great weight on the point."

[3] What constitutes citizenship in another state, in the sense of the Constitution and Judiciary Act, with reference to the jurisdiction of the federal courts was discussed by Circuit Justice Marshall in Prentiss v. Barton, No. 11,384, 19 Fed. Cas. 1276. He said:

"In the sense of the Constitution and of the Judiciary Act, he who is incorporated into the body of the state, by permanent residence therein, so as to become a member of it, must be a citizen of that state, although born in another. Or, to use the phrase more familiar in the books, a citizen of the United States must be a citizen of that state in which his domicile is placed."

He points out that state citizenship cannot depend entirely upon birth; that the rights so conferred, as respects suits in the courts of the United States, may be changed by a change of residence.

In Prentiss v. Brennan, No. 11,385, 19 Fed. Cas. 1278, Mr. Justice Nelson says:

"A person may be a citizen of the United States, and not a citizen of any particular state. This is the condition of citizens residing in the District of Columbia, and in the territories of the United States, or who have taken up a residence abroad, and others that might be mentioned. A fixed or permanent residence or domicile in a state is essential to the character of citizenship that will bring the case within the jurisdiction of the federal courts."

It is apparent that state citizenship, under our system and as used in the Constitution and Judiciary Act, is essentially different from national citizenship. The latter is defined to be the relation of allegiance and protection between individuals and their country. It is the antithesis of alienage, and involves a national right or condition. As was said in Lynch v. Clarke, 1 Sandf. Ch. (N. Y.) 583:

"It pertains to the confederated sovereignty—the United States—and not to the individual states."

A citizen of the United States owes his primary and highest allegiance to the general government, and not to his particular state. On the other hand, state citizenship is the practical equivalent of domicile.

"That place is properly the domicile of a person in which he has voluntarily fixed his abode, not for a mere special or temporary purpose, but with a present intention of making it his permanent home." 14 Cyc. 833.

Generally speaking, and especially with reference to the Judiciary Act, it must involve national citizenship. Although a state may, by its Constitution and laws, confer certain privileges of citizenship on foreign subjects, it cannot make them citizens within the meaning of this act. City of Minneapolis v. Reum, 6 C. C. A. 31, 56 Fed. 576. Nevertheless, such state citizenship or domicile is not at all essential to national citizenship.

[4] It would appear conclusively from the facts presented, from the uniform views expressed by the courts, and from the definitions universally accepted, that the defendant in this case has established a domicile in London, England. She lives there. She declares it to be her home, and that it is her intention to remain there indefinitely.

She has abandoned her former home in Missouri for an indefinite and uncertain period, with no present intention of returning. Her present visit is a temporary one. It is her purpose to return to England, and she would have executed that purpose before this, had it not been for the pendency of this suit. Ennis et al. v. Smith et al., 14 How. 400-423, 14 L. Ed. 472; Morris v. Gilmer, 129 U. S. 315-328, 9 Sup. Ct. 289, 32 L. Ed. 690; 14 Cyc. 833. Under such circumstances, she is not and cannot be a citizen of Missouri within the meaning of the Judiciary Act conferring jurisdiction upon the federal courts of controversies between citizens of different states.

[5] Is she, then, a citizen of the United States, or is she an alien? Because, if the latter, she can be sued in this court, if found in this jurisdiction, by the complainant, who is a citizen of the state of New York. It being admitted that she is by birth a citizen of the United States, the burden is upon the complainant to show that she has renounced or otherwise abandoned or lost that citizenship. She herself asserts it. What must we conclude from the facts appearing in testimony?

There has been no act of naturalization, nor any step in that direction. If she has lost her citizenship at all, it must be through some act of expatriation. What is essential to bring about that result? It will hardly be contended that mere change of residence, even with intention never to return, can have that effect. Miller, Circuit Justice, in Lanz v. Randall, No. 8,080, 14 Fed. Cas. 1131.

"In order that expatriation may be considered to have taken place, there must be an actual removal from the country of which the individual is then a citizen or subject, made voluntarily by a person of full age and under no disability, as the result of a fixed determination to change the domicile and permanently reside elsewhere, as well as to throw off the former allegiance and become the citizen or subject of a foreign power." 14 Cyc. 145, 146.

In State v. Adams, 45 Iowa, 99, 24 Am. Rep. 760, it was held that:

"Mere removal from the United States and residence in a foreign country for a period of years does not operate as a withdrawal of citizenship, where it is not shown that the individual intended to or did become a foreign citizen."

See, also, Ludlam v. Ludlam, 26 N. Y. 356, 84 Am. Dec. 193.

It may be conceded that a citizen may reside abroad under such circumstances as to forfeit his right to the protection of the sovereignty to which he owes or professes allegiance; but this is not tantamount to a loss of his former citizenship, and certainly not within the meaning of the Judiciary Act. The purpose to effect this must be manifested by some unequivocal act on the part of the citizen seeking or suffering expatriation. Comitis v. Parkerson (C. C.) 56 Fed. 557, 22 L. R. A. 148. We have seen that citizens and subjects of one country may acquire a domicile in a foreign country without such forfeiture. There has been in this case no such act, coupled with intention, as would operate to convert this defendant into an alien within the meaning of the law now under consideration.

It follows that, inasmuch as Miss Lyne is neither a citizen of a state, nor an alien, within the meaning of the Judiciary Act, this court

is without original jurisdiction to entertain this action. That this may have the practical effect of denying complainant the right to litigate the differences between himself and the defendant in any federal court cannot alter the situation.

"As has been so often said by the Supreme Court, construing the present Judiciary Act, 'the whole purport and effect of that act was not to enlarge, but to restrict and distribute, jurisdiction.' Shaw v. Mining Co., 145 U. S. 444 [12 Sup. Ct. 935, 36 L. Ed. 768]. And, as said before, Congress under constitutional power created all federal courts inferior to the Supreme Court, and conferred on such courts their jurisdiction and power. Within the constitutional limitation it may grant the exercise to such courts of just so much or so little judicial power as in its wisdom it may deem fit." Mahopoulus v. Chicago, R. I. & P. Ry. Co. (C. C.) 167 Fed. 172.

It will not be urged that citizens of the United States have the right to prosecute actions against other citizens in any jurisdiction they may find convenient. If Miss Lyne were conceded to be a citizen of Missouri, and, studiously avoiding either New York or Missouri, had elected to give concerts in Chicago, in the Northern district of Illinois, would it be contended that, because of diverse citizenship, the complainant could have invoked the jurisdiction of the federal courts in the latter district? Obviously not. This is because the federal courts, in this respect, are courts of a limited and prescribed jurisdiction.

Here, inasmuch as the jurisdiction is entirely wanting, no act of the parties could operate to confer it. The conclusion here reached necessarily disposes of all other contentions of complainant made in argument and brief.

The plea to the jurisdiction must be sustained; and it is so ordered.