NEW JERSEY TITLE GUARANTEE AND TRUST COMPANY, respondent,

*v.*

JERSEY CO-OPERATIVE REALTY COMPANY et al., appellants.

[Decided May 9th, 1919.]

On appeal from a decree of the court of chancery advised by Hon. James F. Fielder, advisory master, who filed the following opinion:

The defendant Jersey Co-operative Realty Company was the owner of two tracts of land in Union county, the one known as the El Mora tract, and the other as the Elizabeth Heights tract. Through an agent it applied for and was ganted a loan by complainant on bond and mortgage in the sum of $20,000, which mortgage was dated June 30th, 1913, and recorded July 5th, 1913. The mortgaged land was part of larger tracts owned by the mortgagor and its predecessors in title and was covered by three mortgages, one held by the Mutual Life Insurance Company on the Elizabeth Heights tract; the second held by the

estate of Phebe O. Earl, covering the El Mora tract, and the third held by Myra W. Woodley, covering both tracts. The complainant applied its $20,000 loan to pay off these three mortgages, the first being cancelled of record and the Earl and Woodley mortgages being assigned to complainant. The expenses of the loan, including the assignments, added to the amount of the three mortgages, left a balance of $3,416.80, which was paid to the mortgagor. Certain parts of the tracts covered by the assigned mortgages had been sold by the mortgagor prior to the loan, and the mortgagor specifying lots or plots which it desired excepted from the mortgage lien, they were not included in the new mortgage, and were also, as part of the transaction, released by complainant as assignee of the two prior mortgages, such releases being given without consideration. This suit is brought to foreclose the three mortgages.

The Jersey Co-operative Realty Company was a land company and had made maps of both tracts showing streets, blocks and lots thereon. Deeds and contracts had been given and recorded for lots it had sold prior to the execution of complainant's mortgage, while for others there were unrecorded contracts. When application was made for the $20,000 loan, copies of the maps were furnished the complainant, with a list of the lots which were to be included in the mortgage, and complainant's title examination was made against the listed lots, and so far as the record disclosed, title to all the lots mortgaged to complainant was in the mortgagor free and clear of any contract to convey, or other interest or lien in any other person. As a matter of fact, there were outstanding contracts of which complainant claims it had no notice, but some of the answering defendants contend that complainant was actually informed that unrecorded contracts existed, or that its rights must be held to be subject thereto, because it knew that the mortgagor's business was selling lots and it was therefore charged with notice of all sales made by it. After the mortgage was recorded, contracts purporting to antedate the mortgage and deeds under such contracts were placed on record for lots in the mortgaged tracts.

The complainant's mortgage contained a clause whereby it agreed to release lots in either tract on payment of $5 per front

foot, but the Earl mortgage contained no release clause, and the Woodley mortgage contained a provision for releases on the basis of an acreage value. From the Earl and Woodley mortgages the complainant, as has been stated, gave releases without consideration for property not included in its third mortgage, and it further released various lots from all three mortgages on the basis of the front foot rate specified in the third mortgage. Some of these releases were given before and others after the answering defendants' interest were made matter of record, but again contending that complainant had actual or constructive notice of their rights, they say that complainant under the Earl mortgage could release only for an adequate consideration, and under the Woodley mortgage for a consideration based on an acreage rate, and that the consideration received was inadequate.

The determination of the two points raised by the defendants turns upon the question of notice to complainant of their rights. The rule is that where the party sought to be charged has actual notice that the property is encumbered, or in some way affected by the rights of others, he is bound with constructive notice of facts which a proper inquiry made by him would disclose. There is no evidence in the case to show that the mortgagor's officers or agents informed the complainant of specific outstanding contracts affecting the property to be mortgaged. The officers of the complainant who had to do with the transaction testify they had no such knowledge. The property was vacant, and when complainant's officers inspected it, prior to agreeing to make the loan, there was no evidence of ownership by possession. The president and the agent of the mortgagor submitted to complainant a list of the lots which they proposed to mortgage and a list of others which were to be excepted from the mortgage, and this was equivalent to a statement that those they proposed to mortgage were free from claims of others, and that those to be excepted were the ones already conveyed or under contract, and the purpose of the releases from the Earl and Woodley mortgages were to free the excepted lots, so that the mortgagor could convey them or assure good title to the holders of deeds. The only evidence in the case which might charge the

complainant with notice of the defendants' claims was given by Mr. Woolley, a title examiner for complainant, who testified that Seaman, the agent who negotiated the loan, told him there might be outstanding contracts and that the complainant had better take assignments of the prior mortgages for its protection against any such. It is not necessary to discuss whether the position Woolley held with his company bound the company's officers or directors with knowledge of such facts communicated to him, because it does not appear that any knowledge of sufficient definiteness was communicated to him which would put him or his principal on inquiry.

The complainant had before it the application for the loan made by Shearer, the president of the borrowing company, which was, in effect, a statement that there were no outstanding contracts. I refer to the following questions and answers therein contained:

"9. Is the property encumbered by mortgage, easement, ground rent, mechanic liens, municipal liens, judgments, or 'by other lien or encumbrance?'

"Ans.   $4,500; $4,000; $10,000.

"12. Objections to title known or rumored?

"Ans.   None. Restrictions in deeds by owner.

"13. Unrecorded deeds, agreements, adverse claims and interests or secret trust, known or rumored to exist?

"Ans.   None."

The title examination showed the record clear, and upon all these facts I conclude that no statement was made to complainant's officers which should have aroused their suspicions, or required inquiry on their part to ascertain whether there were unrecorded contracts or deeds for any part of the mortgaged premises, and I am of the opinion that its mortgage is a prior lien to the defendants' claims.

We come next to consider the effect of complainant's releases. The releases from the Earl and Woodley mortgages, given at the time of the execution of its $20,000 mortgage, were delivered before the defendants' interests were made matters of record, and having no notice of such interests, complainant was justified in exacting no consideration therefor. It was part of the agree-

ment for the loan that they should be released, and had complainant canceled the Earl and Woodley mortgages of record, that would have been the effect. All other releases were given in accordance with the release clause contained in the $20,000 mortgage. Under our decisions, a mortgagor is not charged with notice of subsequent encumbrances, or interests, merely by the recording of instruments evidencing the same, but knowing that the mortgagor was engaged in selling lots and that it would probably sell some of those mortgaged, and having incorporated a release clause for that purpose in its mortgage, the complainant would probably be bound to take notice of the rights of subsequent purchasers, but as its real debt was the $20,000 mortgage, and the two prior mortgages were merely collateral thereto, I am of the opinion that the defendants have no rights as against the releases given for the consideration specified in the $20,000 mortgage.

The complainant holds a judgment against the owner or owners of the premises in question, and there is no dispute that its execution thereon and levy on the mortgaged premises were prior to any other execution and levy. After the filing of the bill of complaint a receiver for the owner was appointed by this court, who was by proper proceedings on complainant's motion made a defendant herein and the bill taken as confessed against him. I think the complainant is entitled to have its judgment made out of the sale of the mortgaged premises, in the proper order of its priority.

As to the method or manner of selling the mortgaged premises, I am willing to hear the parties further, but I think the property still covered by the complainant's mortgages should be sold to pay the amount found due thereon and in satisfaction also of the two mortgages it holds by assignment. Such portion of the two tracts in which the answering defendants have no interest should be sold first, and the El Mora tract should be sold prior to the Elizabeth Heights tract. Each tract should be sold in parcels of two lots each, and if sufficient is not realized to satisfy complainant's mortgage and judgment, the remaining part of the mortgaged premises should be sold in such order as may be settled by the decree to be entered herein.

It is suggested on behalf of the answering defendants that the property should be sold free of municipal liens and free of restrictions. I know of no statute authorizing such course with respect to liens, and I can offer no different, or less, or better title sold than the mortgage conveyed. I think the sale should be made by a special master; that he should be authorized to expend, not exceeding $300, to specially advertise the sale, and that after paying the amount due the complainant on its mortgage and judgment, and the amount due the defendant Gilhooley, trustee, on his mortgage, the surplus should be brought into court and the equities of the other defendants ascertained and a proper distribution then ordered.

*Messrs. Collins & Corbin, Mr. Clarence D. Meyer* and *Mr. John D. English,* for the respondent.

*Mr. Sidney W. Eldridge,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Advisory Master Fielder.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR—11.

*For reversal*—None.