CHARLES W. BOWRING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 41871, 54100. Promulgated December 29, 1932.

*J. H. Cohen, Esq.*, and *Kenneth Dayton, Esq.*, for the petitioner.
*O. J. Tall, Esq.*, for the respondent.

■■■■

OPINION.

LEECH: The allowance of the disputed credit involves the proper construction of the applicable sections of the Revenue Acts of 1924 and 1926 which are identical and read as follows:

SEC. 222. (a) The tax computed under Parts I and II of this title shall be credited with:

\*       \*       \*       \*       \*       \*       \*

(3) In the case of an alien resident of the United States, the amount of any such taxes paid or accrued during the taxable year to any foreign country, if the foreign country of which such alien resident is a citizen or subject, in imposing such taxes, allows a similar credit to citizens of the United States residing in such country.

The facts are that petitioner's national origin was Newfoundland, of which he became a subject and to which he owed and has continued to owe his permanent allegiance; that he had the additional status of subject of the British Crown, dependent upon his local status as a subject of Newfoundland; and that, although his domicile was at a different place and his residence at yet another, he was a subject of Newfoundland during the years in controversy.

What is the meaning of the phrase " taxes paid or accrued   \*   \*   \* to *any* foreign country " as used in the 1924 and 1926 Acts?   The original provision for the credit of foreign taxes, as first enacted in the Revenue Act of 1918, section 222 (a) (3),[1] definitely limited this credit to the amount of income and profits taxes paid to the foreign country of which the resident alien was a citizen or subject, upon income derived from sources therein, provided a similar credit was allowed to citizens of the United States residing in such country. There is a significant contrast in the wording of the quoted section of the 1918 Act and the corresponding sections of the later acts here involved.   The change was made in the drafting of the Revenue Act of 1921.   Section 222 (a) (3) of that act is identical with the same sections of the 1924 and 1926 Acts, except for the words " or accrued " in the later acts, which difference is immaterial here.   A diligent search of the House and Senate Committee Reports on the Revenue Act of 1921 reveals no statement of the purpose of the change in

---

[1] Sec. 222. (a) That the tax computed under Part II of this title shall be credited with:

\*       \*       \*       \*       \*       \*       \*

(3) In the case of an alien resident of the United States who is a citizen or subject of a foreign country, the amount of any such taxes paid during the taxable year to such country, upon income derived from sources therein, if such country, in imposing such taxes, allows a similar credit to citizens of the United States residing in such country.

■■■■

wording of section 222 (a) (3) from the form in which it appeared in the 1918 Act. However, the original House Bill 8245 was drafted in the form of specific amendments to the Revenue Act of 1918 and section 228 provided that section 222 (a) (3) of the 1918 Act be amended to read as above stated. The House Bill was amended by the Senate to take the form of a new revenue act and section 222 (a) (3), as altered, was enacted in the Revenue Act of 1921. While the reports of the hearings held by the Committees of the House and Senate on the 1921 Act do not disclose any effort by taxpayers to secure a change in this particular subdivision of section 222, they do disclose a decided effort to secure new legislation to relieve American citizens residing abroad from double taxation. Without doubt the primary purpose of this provision in the Revenue Acts of 1921, 1924, and 1926 was to mitigate the evils of double taxation upon American citizens, *Burnet* v. *Chicago Portrait Co.*, 281 U. S. 1, through the medium of inducement, by the allowance of credits to any resident alien whose country allowed similar credits to American citizens resident there. A change in the phraseology of a statute, reenacted, creates a presumption of change in the intent of the legislative body from that expressed in the former statute. *Crawford* v. *Burke*, 195 U. S. 176, 190. The broadened scope apparent in the wording of the later acts shows clearly the intention of Congress to extend further and logically the double taxation relief first enacted in the 1918 Act.

We hold, therefore, that section 222 (a) (3) of the Revenue Acts of 1924 and 1926, *supra*, provides for this credit of income taxes, paid or accrued by a resident alien to *any* foreign country, whether or not the taxpayer is a citizen or subject thereof, provided the other conditions of this subsection are met.

Our next consideration is the meaning of certain controverted terms in the expression "if the *foreign country* of which such alien resident is a *citizen or subject*," as used in section 222 (a) (3), *supra*.

The term "foreign country" means any foreign political entity, with or without international standing as a member of the family of nations, which has the power to and does levy and collect income taxes which may be the subject of the intended credit. *Burnet* v. *Chicago Portrait Co.*, *supra*. Upon the facts in the instant case, Newfoundland is a foreign country within the meaning of section 222 (a) (3), *supra*.

The Commissioner in his reply brief has abandoned his original contention that petitioner acquired the local status of subject of Great Britain by establishing his domicile therein, and concedes that the laws of Great Britan do not provide for the acquisition of such

status by the nationals of the various colonies and dominions of the British Empire. The Commissioner now contends that petitioner, being a British subject (subject of the Crown), domiciled in Great Britain, was a "subject" of Great Britain within the purview of section 222 (a) (3), *supra*. He contends that domicile controls the status of petitioner for this statutory purpose.

In construing statutes the legislative intent must be sought and is the all important factor, *Wolsey* v. *Chapman*, 101 U. S. 755; *United States* v. *Stone & Donner Co.*, 274 U. S. 225. This intent must be ascertained from the words Congress has chosen to employ, interpreted according to their ordinary meaning; *Dewey* v. *United States*, 178 U. S., 510, 520.

The following quotation from the case of *State* v. *Manuel* (1834), 4 Dev. & Bat. 20, has been quoted with approval by the Supreme Court in *United States* v. *Wong Kim Ark*, 169 U. S. 649, 663, and *Hennessy* v. *Richardson Drug Co.*, 189 U. S. 25:

> The term "citizen," as understood in our law, is precisely analogous to the term "subject" in the common law, and the change of phrase has entirely resulted from the change of government. The sovereignty has been transferred from one man to the collective body of the people; and he who before was a "subject of the King" is now a "citizen of the state."

The term "subject" has been held, in exceptional circumstances, to include a person owing obedience and temporary allegiance to a particular government because of residence within its boundaries. Such a definition has been applied where the statute or treaty under discussion, directly or indirectly, so construed the term, *The Pizarro*, 2 Wheat. 227, or, where the sovereign right of the Federal Government to enforce obedience to its laws by those resident here was involved; *Carlisle* v. *United States*, 16 Wall. 147. Obviously, the facts do not bring the instant case within these exceptions. The word is more commonly and accurately used in its narrower sense and is limited in its meaning to one who, by birth or naturalization, owes permanent allegiance to a government. *Nagle* v. *Loi Hoa*, 275 U. S. 475; *United States* v. *Karnuth*, 30 Fed. (2d) 242; *Hammerstein* v. *Lyne*, 200 Fed. 165; Dicey, Conflict of Laws (2d Ed.), 164. The word "subjects" in section 2 of Article III of the Federal Constitution, extending the jurisdiction of the Federal courts to cases between a state or its citizens "and foreign states, citizens or subjects," has been held to refer to permanent allegiance to a foreign government. *Hammerstein* v. *Lyne*, *supra*.

Domicile has to do with civil status, upon the basis of which, the civil rights of the individual rest. *In re Green's Estates*, 164 N. Y. S. 1063. It is important in determining state citizenship

in the United States under the Fourteenth Amendment to the Federal Constitution,[1] *The Slaughter House* cases, 16 Wall. 36. Domicile is wholly irrelevant to the issue of Federal citizenship or any alien political status, of which permanent allegiance, by birth or naturalization, is solely decisive. *Hammerstein* v. *Lyne, supra; Nagle* v. *Loi Hoa, supra; United States* v. *Karnuth, supra.*

We conclude that "subject" as used here means, exclusively, a person owing permanent allegiance to a government because of birth or naturalization alone, and, that petitioner was a subject of Newfoundland within the meaning of section 222 (a) (3), *supra.* Any other construction would produce absurd consequences, which should be avoided. *In re Chapman*, 166 U. S. 661; *United States* v. *Katz*, 271 U. S. 354. This subsection applies only to resident aliens. If domicile controls the status of petitioner for this statutory purpose, as contended by the Commissioner, and if, *arguendo*, petitioner were domiciled as well as resident in this country, he would not be an alien within the meaning of the subsection, but, on the contrary, would be a citizen and entitled to the credits provided in other subdivisions of section 222 of the Revenue Acts of 1924 and 1926.

The Commissioner contends that the question of whether petitioner is in fact a citizen or subject of Great Britain is *res adjudicata* by the decision in the case of *Bowring* v. *Bowers*, 24 Fed. (2d) 918; certiorari denied, 277 U. S. 608. That case was an action brought by this petitioner to recover income taxes for the years 1917 to 1921, inclusive, assessed and collected on the basis that he was a resident alien, whereas he had reported his income and paid a lesser tax on the basis of a nonresident alien. The record in that case has been submitted as a joint exhibit in this proceeding. The pleadings raised no issue as to the nationality of the petitioner. No evidence of his foreign allegiance was introduced, nor was the question of such status argued. After holding that residence, as used in the estate tax provisions of the revenue acts, is synonymous with domicile because the incidence of estate and succession taxes has been determined historically by domicile, the court held that there is a difference between the legal intendment of the terms "residence" and "domicile" and that, as to the income tax provisions of the revenue acts, the liability for tax was fixed by residence, a permanent abode of no transient character. The court then decided that petitioner was a *resident* alien and taxable as such. After noting that petitioner was required

---

[1] Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. * * *

to pay an income tax to Great Britain, because domiciled there, and also to the United States upon the same income, stated:

&ast; &ast; &ast; Moreover, the hardship of the double taxation would have been prevented by reason of section 222 (a) (3) of the Revenue Act &ast; &ast; &ast; *if Great Britain, the country of which plaintiff is a citizen*, had allowed to citizens of the United States residing there a credit of taxes paid by them in the United States upon their taxes paid in Great Britain, but there is no such reciprocal legislation. [Italics ours.]

In making this statement, the court was not deciding as a matter of fact or law that petitioner was a citizen of Great Britain, for there was no such issue presented to the court. It was not necessary for the court to determine the question of petitioner's citizenship, i. e., the country to which he owed permanent allegiance, in deciding the issue which was before the court, namely, whether petitioner was a *resident* or a *nonresident* alien of the United States for purposes of income taxation. We are of the opinion that the decision in the case of *Bowring* v. *Bowers, supra*, does not determine this issue. *Cromwell* v. *County of Sac*, 94 U. S. 351.

However, the stipulation of the parties as to Newfoundland satisfying the similar credit provision here in question, by allowing credit for income taxes paid to this country or by exempting income derived from this country by our citizens residing in Newfoundland, is not broad enough to include the instant case within the meaning of the term " similar credit," as used in section 222 (a) (3), *supra.*

The word " similar " is defined as: " nearly corresponding "; " resembling in many respects "; " somewhat alike "; " having a general likeness." Cf. Webster's New International Dictionary; *Fletcher* v. *Interstate Chemical Co.*, 110 Atl. 709; 94 N. J. Law, 332; *Greenbaum* v. *DeJong*, 166 N. Y. S. 1042, 1044; *Fidelity & Deposit Co.* v. *Brown*, 92 Vt. 390; 104 Atl. 234, 236; but " similar " does not mean " identical," *In re Bonsall's Estate*, 135 Atl. 724, 725, 228 Pa. 39. Bouvier's Law Dictionary defines " similar " as follows: " Denotes partial resemblance, and also sameness in all essential particulars."

The sense in which Congress has employed the word "similar" must be determined in accordance with its ordinary meaning and in the light of all the circumstances that may fairly be regarded as having been within the knowledge of Congress at the time. *Dewey* v. *United States, supra.* We have stated the purpose of Congress in enacting section 222 of the Revenue Acts of 1921, 1924, and 1926 was to mitigate against the evils of double taxation of American citizens. This is the controlling factor in construing the provision, *Wolsey* v. *Chapman, supra; United States* v. *Chapman, supra.* Section 222 (a) (1), applicable to citizens of the United States, and

section 238, applicable to domestic corporations, provide that taxes paid to any foreign country shall be credited against income taxes due this country. Thus some relief against double taxation of American citizens and corporations by this country was secured by direct legislation. But this was only a part of the relief which Congress obviously intended to accomplish. What of our citizens residing abroad and engaged in the highly competitive foreign trade? How could they, so situated, be relieved of the burden of double taxation at the hands of foreign countries? The only answer was, by encouraging these foreign countries to provide this desired relief by our proposed reciprocity. In the case of *Burnet* v. *Chicago Portrait Co.*, *supra*, the Supreme Court referred to section 222 (a) (3) as a *reciprocal* provision.

The stipulation of the parties, and the Commissioner's Regulations 65 and 69, art. 385, with which it is identical, *pro tanto*, merely sets out two conditions wherein certain countries meet the "similar credit" requirement of this section, namely, that those countries, including Newfoundland, allow to American citizens resident there a credit for income taxes paid to this country, or exempt from tax income derived from this country. In the case of a foreign country whose tax laws contain either one of those two provisions and whose citizen or subject is resident in this country, section 222 (a) (3), *supra*, and the Commissioner's regulations allow such resident alien a credit for taxes paid to such country. Either of the two provisions will suffice, for, while the type of credit or exemption may not be identical with that allowed by this country, the credits allowed by the two countries would be "similar," as above defined, and the result would be, practically, the corresponding and reciprocal relief from double taxation the legislation was intended to effect.

The instant case goes far beyond the provisions of the regulations, and the stipulation. The credit sought is not for taxes paid Newfoundland, which would fall squarely within the regulations and the stipulation, but is for taxes paid to Great Britain. Petitioner contends that "similar credit" in this section means that, if either type of credit above described is allowed to American citizens residing in Newfoundland, for instance a credit for taxes paid to this country, then the Newfoundland subject residing here may take credit for any income taxes paid, not only to Newfoundland, but also to any foreign country. We have held that a resident alien is entitled to credit for income taxes paid to *any* foreign country, provided the other conditions of the subsection are met. We have also stated that the provision is reciprocal. It was not enacted primarily for the benefit of aliens residing here, but as a means of inducing foreign countries to relieve American citizens residing abroad from

double taxation. The clear intendment of the subsection, read as a whole, is that the credit must be a corresponding one. Applied here, petitioner must show that Newfoundland allows our citizens resident there a credit for taxes paid to Great Britain or exempts from taxation income arising there. If we should construe this clause as petitioner contends, Congress would have accomplished the protection of the resident alien against double taxation, to a much greater extent than American citizens, and not only the intended purpose of the legislation would be largely thwarted, but the revenues of the Government would be depleted without justification or consideration. This is apparent in the instant case in the fact that petitioner's income tax paid to Newfoundland is insignificant, in the words of petitioner's counsel, whereas the British income taxes he seeks to credit are very substantial.

Petitioner has rested his case upon the stipulation that Newfoundland satisfies the similar credit provision in certain particulars and has argued strenuously that this is sufficient to entitle him to the credit sought. The petitioner, having failed to establish as a fact that Newfoundland allows to American citizens resident there a credit for income taxes paid to Great Britain, or an exemption from income tax of income arising there, we hold that he is not entitled to credit British income taxes against such taxes due the United States.

The parties having stipulated the correct amount of the deficiencies in the event the credits sought are not allowed in this proceeding, the deficiencies are redetermined to be in the amounts of $23,674.34, $4,055.35, and $3,942.59 for the years 1924, 1925, and 1927, respectively.

Reviewed by the Board.

*Judgment will be entered accordingly.*

MATTHEWS, dissenting: I agree with so much of the majority opinion as holds that the petitioner is a citizen of Newfoundland, but dissent from that portion of the opinion which denies petitioner the right to a credit for taxes paid to Great Britain.

Under all of the revenue acts, from 1913 to date, citizens of the United States and resident aliens have been subject to tax on total income from all sources and have been granted the same deductions and personal exemptions. When the Revenue Act of 1918 first introduced into the income tax system the principle of allowing a credit for taxes paid to foreign countries, the credit allowed was the amount of taxes paid to foreign countries on income from sources therein, and in the case of an alien resident of the United States the credit was limited to the amount of any income taxes paid to the country of

which such alien was a citizen or subject, upon income derived from sources therein, but only if such country allowed a similar credit to citizens of the United States residing in such country. The effect of the 1918 credit for tax provision was in many instances to wipe out all tax liability due to the United States, notwithstanding the fact that such taxpayers had income from sources within the United States. This was because the rates imposed by foreign countries were higher than rates imposed by the United States. Consequently, a change was made in the 1921 Act which based the credit on the amount of any income and profits taxes paid to any foreign country, whether on income from sources therein or not, but limited the credit to an amount not in excess of the same proportion of the tax due the United States against which the credit was claimed, which the foreign net income bore to total net income. This limitation in the credit provision had the effect of relieving American citizens of only the amount of the United States tax on foreign income, or so much of such tax as was equal to the foreign tax paid. It did not relieve Americans of paying taxes to the United States on income from United States sources. An alien resident of the United States was granted the same credit for taxes paid to foreign countries as was allowed to a citizen *if* the country of which the alien was a citizen or subject, in imposing such taxes, allowed a similar credit to citizens of the United States residing therein. The same provision was contained in the Revenue Acts of 1924, 1926, and 1928, with only slight changes not material to the question in issue.

The amount of the credit allowable to a resident alien under the provisions of section 222 (a) (3) can not be determined without taking into consideration paragraph (a) (5). Reading these two subsections together, it is clear that *any* income or profits taxes paid to any foreign country, regardless of the source of the income on which such taxes are computed, form the basis in determining the amount of credit allowable, such credit being limited to an amount not in excess of the same proportion of the tax due the United States against which the credit is claimed, which foreign net income is to total net income.

Under the credit provision, in so far as it is granted to a resident alien on the basis of a similar credit being granted by the country of which such alien is a citizen or subject, the United States is primarily interested in obtaining an exemption of United States income from foreign income taxes imposed on such income received by the citizens or residents of the foreign country. The United States has the primary right to income tax on income from United States sources, whether it goes to a citizen, resident, or nonresident alien. The right of the Government to tax the nonresident citizen on his

income from sources without the United States is based solely on his relation to the Government of the United States, and the right to tax the resident alien on his income from sources without the United States is based on the right to demand that all residents bear their share of the necessary expenses of government. In the case of the citizen and resident alien, the United States recognizes the primary right of the foreign government to tax income from sources therein and accordingly grants a credit, which, in effect, relieves the American taxpayer, whether a citizen or resident alien, of United States taxes on such foreign income. Secondarily, the purpose of the provision is to secure relief to United States citizens residing in foreign countries from paying income tax to the country of residence on income from sources in another foreign country which has also taxed such income. The nonresident alien must look to the country of residence for any relief from double taxation on income from United States sources.

Article 385 of Regulations 62, issued in February, 1922, under the 1921 Act, entitled " Countries which do or do not satisfy the similar credit requirement," as well as the corresponding article in the regulations issued under the 1924, 1926 and 1928 Acts, have all contained Newfoundland in the " incomplete list of countries which satisfy the similar credit requirement of section 222 (a) (3), * * * either by allowing to citizens of the United States residing in such countries a credit for the amount of income taxes paid to the United States, or in imposing such taxes, by exempting from taxation the incomes received from sources within the United States by citizens residing in such countries." This same article, in all the regulations, also contains an incomplete list of the countries which do not satisfy the similar credit requirement, and further provides: "A resident of the United States, who is a citizen or subject of any country in the first list, is entitled, for the purpose of the total tax due the United States for 1921 [1924, 1926, and 1928, in regulations under later acts] and subsequent years, to a credit for the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country. If he is a citizen or subject of any country in the second list, he is not entitled to such credit. If he is a citizen or subject of a country which is in either list, then to secure the desired credit, he must prove to the satisfaction of the Commissioner that his country satisfies the similar credit requirement of the statute."

The only difference between the article in the regulations issued under the 1921 Act and that in regulations issued under later acts is that more countries were added to each list in the later regulations.

Petitioner came to the trial of this case relying on the provision of the regulations that Newfoundland was a country which satisfied the similar credit requirement, and that income taxes paid by a citizen of Newfoundland residing in the United States to *any* foreign country could be used as a basis for the credit. In my opinion, the Commissioner, by the statement made in the latter part of the article in question, has in substance said that any citizen of a country named in the first list need not introduce any evidence to show what the taxing statutes of his country provide.

The effect of the majority decision is to hold that, inasmuch as Newfoundland allows a credit for taxes paid to the United States, or exempts income from sources within the United States when received by a citizen of the United States residing in Newfoundland, therefore, Newfoundland taxes an American citizen residing therein on income from sources in Great Britain. I do not think this conclusion can or should be drawn from the first sentence of article 385.

I agree with the majority opinion that the credit which a foreign country must grant to United States citizens residing therein must be similar to the credit which the United States grants to its citizens wherever resident. If Newfoundland, in imposing income and profits taxes on its residents, (1) requires total income from all sources to be reported and, by means of deductions of foreign income or credits against Newfoundland tax of foreign taxes paid on foreign income, collects a tax only on income from Newfoundland sources, or, (2) imposes such taxes only on income from sources in Newfoundland, it certainly meets the similar credit requirement of section 222 (a) (3). And it would be true not only that Newfoundland allows " citizens of the United States residing in such country a credit for the amount of income taxes paid to the United States, or in imposing such taxes exempts from taxation the income received from sources in the United States by citizens residing therein," but would also be true that Newfoundland allows a credit for taxes paid to all foreign countries or exempts from tax income from all foreign countries.

It is wholly improbable that any country would, in its general income tax statutes, refer to citizens of the United States, resident therein, or income from sources in the United States, or taxes paid to the United States, or refer to any foreign country by name. In our income tax statutes we carefully refrain from so doing. We refer to aliens and classify them as resident and nonresident; to income as from sources within and without the United States, and classify income from without the United States as from sources within possessions of the United States and from sources within foreign countries. In the credit provision here under consideration, the reference is to income taxes paid to any foreign country and the

credit is allowed to a resident alien who is a citizen of any foreign country which grants a similar credit to United States citizens residing therein. Because of the numerous treaties with foreign countries to which the United States is a party, and also for the purpose of classification, this Government does not, in its taxing statutes, name certain countries to whose citizens it grants exemptions and credits. The same compelling reasons would prevent other countries from naming the United States in their income tax laws. I think, therefore, that it is safe to assume that the statutes of Newfoundland do not refer in terms to citizens of the United States residing in Newfoundland, or to income taxes paid to the United States, or to income from sources within the United States, but that such statutes may refer to residents and resident aliens, income from foreign countries, or income taxes paid to foreign countries. In other words, the statutes of Newfoundland may well be assumed to be of broader application than the first sentence of article 385 indicates.

One of the foreign countries which is listed in the first sentence of article 385 as satisfying the similar credit requirement is The Netherlands. It is of interest to note that M. Sinninghe Damsté, Director-General of Direct Taxation, Customs and Excise of The Netherlands, in Memorandum F. 35, published by the League of Nations, points out that The Netherlands has sought to obviate double taxation in the following manner: The tax charged on the total income, including income derived from abroad, is first calculated, then the tax which *would be due* on the income from abroad, if it were taken alone. This second sum is then deducted from the first. The actual rate of taxation abroad is not taken into consideration.

The Commissioner must have had before him the provisions of The Netherlands law when he added that country to the list of the countries which satisfy the similar credit requirement, " either by allowing citizens of the United States residing therein a credit for taxes paid to the United States, or in imposing such taxes by exempting from taxation the incomes received from sources within the United States." From the provisions of a statute which classifies income from sources without The Netherlands as income *from abroad* and which allows a credit equivalent to The Netherlands tax on such income, the Commissioner has only stated in his regulation the application of the law to the credit for taxes paid the United States or to United States income. The Netherlands statute is broader than the application made by the Commissioner. And it may well be that the Newfoundland statute is also broader than the application made in the regulations.

The petitioner had only a small income from Newfoundland sources and paid a very small tax there. Whether by means of a deduction of foreign income or credits for foreign taxes paid, or because the Newfoundland statute only taxes income from Newfoundland sources when paid to nonresidents, the petitioner, under the Newfoundland statute, in effect paid taxes to Newfoundland only on Newfoundland income. Citizens of the United States, wherever residing, under the letter of the law pay taxes to the United States on total net income from all sources, but where the foreign income is taxed at rates equal to or higher than our rates, citizens of the United States in *effect* pay tax to the United States only on United States income.

The basis for disallowing the credit for taxes claimed by the taxpayer was stated in the notice of deficiency in each case to be that petitioner was not entitled to any credit for taxes paid to foreign countries, inasmuch as it was held that he was a citizen of Great Britain and under article 385 of the Regulations Great Britain is one of the countries which does not satisfy the similar credit requirement of section 222 (a) (3)). Petitioner alleged that the Commissioner was in error in determining that he was a citizen of Great Britain, and further alleged that he was a citizen of Newfoundland.

In his brief, for the first time, the respondent takes the position that neither one of the methods in the first sentence of article 385 meets the similar credit requirement of the statute, and, therefore, petitioner is not entitled to the credits claimed, even though he is held to be a citizen of Newfoundland. At the hearing, counsel for respondent stated that he was willing to stipulate that article 385 was the Commissioner's regulation and that he was bound by it, but was unwilling to stipulate what it meant. The parties then entered into a stipulation in the exact language of the first sentence of article 385 of Regulations 65 and 69. The Board takes judicial notice of the regulations, and the same article in a subsequent sentence unequivocally says: "A citizen of a country in the first list is entitled to a credit for income taxes paid to *any* foreign country." In the light of counsel's statement that the Commissioner was bound by his regulations and in view of the fact that such regulations unequivocally grant a citizen of Newfoundland the credit for taxes paid to any foreign country, I think it wholly unfair for the respondent to have raised the question in his brief as to the sufficiency of either method mentioned in the first sentence of article 385 to meet the similar credit requirement. For ten years the Commissioner, under four revenue acts, has been settling tax liabilities of resident aliens who prove that they are citizens of the countries listed in the first sentence of article 385, by allowing such resident aliens a credit

for taxes paid to *any* foreign country. This petitioner proved that he was a citizen of Newfoundland. The time for the Commissioner to have repudiated his regulation, if that is what he is trying to do in his brief, was prior to or at the hearing, and the petitioner should be given the opportunity to show whether the taxing statutes of Newfoundland grant a similar credit to aliens residing therein.