## BARBER v. VARLETA.

No. 13107.

United States Court of Appeals
Ninth Circuit.

Oct. 7, 1952.

Chauncey Tramutolo, U. S. Atty. (Edgar R. Bonsall, Asst. U. S. Atty., San Francisco, Cal., on the brief), for appellant.

Joseph S. Hertogs, Jackson & Hertogs, San Francisco, Cal., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

Appellee, who was born in the Philippine Islands in 1914, was admitted to the Hawaiian Islands for permanent residence in 1931. On March 22, 1935, he arrived in continental United States but was excluded from admission by a Board of Special Inquiry as a stowaway. He was placed aboard a steamship for deportation to the Hawaiian Islands but escaped from the vessel on April 6, 1935 and made his way into continental United States where he has been physically present ever since except for temporary absences in pursuit of his calling as a seaman on American vessels.

On November 22, 1947 appellee arrived at Norfolk, Virginia from a foreign port, seeking admission as a resident alien seaman returning to the United States. He was detained and accorded a deportation hearing by a hearing examiner for the Immigration and Naturalization Service. A warrant for his deportation was issued on November 29, 1950 charging that at the time of his entry at Norfolk he was not in possession of a valid immigration visa and not exempted from its presentation. While he was in custody pending deportation he filed a petition for writ of habeas corpus in the court below. That court held that appellee is a lawful permanent resident of the United States; that the decision ordering him deported to the Philippine Islands was erroneous and constitutes a denial of due process of law and hence that he was illegally re-

strained of his liberty. Judgment was that appellee be discharged from custody.

The United States has appealed from the judgment and the record before us is an agreed statement setting forth the above facts, pursuant to Rule 76, Fed.Rules Civ. Proc. 28 U.S.C.A.

In 1931 when the appellee was admitted for permanent residence in the Hawaiian Islands, he was a national, although not a citizen of the United States. Cabebe v. Acheson, 9 Cir., 183 F.2d 795. The so-called Philippine Independence Act, 48 Stat. 456, approved March 24, 1934, became effective May 1, 1934 upon its acceptance by concurrent resolution of the Philippine Legislature. Cabebe v. Acheson, supra. § 8(a) (1) of that Act provided that for the purposes of the laws of the United States relating to immigration, exclusion or expulsion of aliens, "citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens." § 8(a) (2) provided in part: "Citizens of the Philippine Islands who are not citizens of the United States shall not be admitted to the continental United States from the Territory of Hawaii (whether entering such Territory before or after the effective date of this section)" (unless they belong to certain classes not relevant here).

It is apparent that when the appellee on March 22, 1935, and again on April 6, 1935, made his way into continental United States, whether as a stowaway, or otherwise, he did so in violation of the section last quoted. Under the rule commonly applied to unlawful entries into the United States by aliens generally, appellee could not have established a domicile in continental United States or acquired a lawful permanent residence there. Hurst v. Nagle, 9 Cir., 30 F.2d 346, 347; Taguchi v. Carr, 9 Cir., 62 F.2d 307; Del Castillo v. Carr, 9 Cir., 100 F.2d 338; United States ex rel. Bartsch v. Watkins, 2 Cir., 175 F.2d 245. However, on May 1, 1946, the Philippine Trade Act of 1946, 60 Stat. 141, 22 U.S.C.A. § 1251 et seq., became effective. This it will be noted, was shortly before Philippine independence became complete by the Presidential Proclamation of July 4, 1946, No. 2695, issued pursuant to the Philippine Independence Act above mentioned.[1] Section 231 of Title II of the Philippine Trade Act, Title 22 U.S.C.A. § 1281, in part provides as follows: "(a) Any citizen of the Philippines who actually resided in the United States for a continuous period of three years during the period of forty-two months ending November 30, 1941, if entering the United States during the period from July 4, 1946, to July 3, 1951, both dates inclusive, for the purpose of resuming residence in the United States, shall, for the purposes of the immigration laws, be considered a non-quota immigrant; and shall not be excluded from entry into the United States by reason of section 213(c) of Title 8, or by reason of so much of section 136 of Title 8 as provides for the exclusion from admission into the United States of natives of a therein specified geographical area. (b) After such admission as a non-quota immigrant he shall, for the purposes of the immigration and naturalization laws, be considered as lawfully admitted to the United States for permanent residence. * * * (d) This section shall not apply to a citizen of the Philippines admitted to the Territory of Hawaii, without an immigration of passport visa, under the provisions of paragraph (1) of section 8(a) of the Act of March 24, 1934 (48 Stat. 456, ch. 84)."

It is apparent that if it can be said that the appellee, after he reached continental United States in the manner indicated above, "actually resided" there, he would come precisely within the provisions of the section quoted. The entry here challenged was on November 22, 1947 which is within the five year period described in the Act. If his residence was of the required quality or character, it was obviously for a continuous period of three years during the 42 months ending November 30, 1941. Therefore if this section applied to the appellee he must now be considered, under subdivision (b) of the section, as "lawfully admitted to the United States for permanent residence." Subdivision (d) does not exclude him as his admission to Hawaii preceded the Act there mentioned.

Our first inquiry therefore is as to whether the words "actually resided" as

---

1. The proclamation appears in a note appended to § 1394 of Title 22 U.S.C.A.

used in this section are descriptive of what appellee was doing in the United States during the period mentioned. We make this inquiry without the assistance of briefs of counsel, as neither appellant nor appellee has alluded to this section. There is no indication that they called it to the attention of the trial court. Of course it might be argued that under the decisions to which we have referred above the appellee could not have a lawful domicile in continental United States because of his original unlawful entry and hence that he was not a "resident" thereof. Cf. Kaplan v. Tod, 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585; Mock Gum Ying v. Cahill, 9 Cir., 81 F.2d 940, 942. Obviously during this period he was not a person who "actually resided" in the Hawaiian Islands.

We think, however, that the words "actually resided" must be held to have been used in this section as referring to physical presence within the United States as distinguished from a lawful domicile or dwelling therein. This meaning appears to be required by the use of the word "actual" as characterizing the type of residence here referred to. It distinguishes that which really and in fact occurred from that which might be described as a legal or lawful condition.[2] We think appellee "actually resided" in the United States during the period mentioned in § 231, and comes within its meaning.

■ Appellant asserts that appellee's entrance at Norfolk, Va. in 1947, was an unlawful one because it was then in violation of the provisions of § 8(a) (2) of the Philippine Independence Act, supra. But if we are right in what we have said as to the meaning of § 231, just quoted, and if it in exact terms applies to appellee, since it is the later enactment and the more specific one, its provisions would control.

■ But even if our conclusions as to § 231 were wrong, yet we think that section 8(a) (2) thus relied upon by appellant cannot be held to make the entry here in question unlawful. The trial court held that § 8(a) (2) of the Philippine Independence Act, supra, became ineffective and inoperative on July 4, 1946 when the Proclamation of Philippine Independence was issued. This, it is said, is the consequence of the inclusion of § 14 in the same Act. It provides: "Upon the final and complete withdrawal of American sovereignty over the Philippine Islands the immigration laws of the United States (including all the provisions thereof relating to persons ineligible to citizenship) shall apply to persons who were born in the Philippine Islands to the same extent as in the case of other foreign countries." It is argued that the prohibition contained in § 8(a) (2) was a special restriction aptly made applicable to natives of the Philippine Islands resident in Hawaii during the period between the enactment of the Philippine Independence Act and the final proclamation of such independence, but that § 14 determined the status of natives of the Philippine Islands for purpose of immigration to the United States once American sovereignty was withdrawn. § 14, it is said, is complete in itself; it puts persons born in the Philippines in the same position with respect to the immigration laws of the United States as natives of any other foreign country.

We think that the trial court was correct in its conclusion that the special restrictions of § 8(a) (2) were inoperative at the time of appellee's entry on November 22, 1947.

---

2. In some other types of cases it has been said that special significance must be given to the use of the word "actual" in connection with the word "residence". Thus in Fitzgerald v. Arel, 63 Iowa, 104, 16 N.W. 712, 18 N.W. 713, 50 Am.Rep. 733, cited in Re Brannock, 131 F. 819, 822, the court, in dealing with a statute which used the words "actual residents" drew a distinction between the "actual" and "legal" residence of a person saying: "The actual residence is not always the legal residence or inhabitancy of a man. The foreign minister actually resides and is personally present at the court to which he is accredited, but his legal residence or inhabitancy or domicile are in his own country. * * * In our opinion, whenever a man buys or rents a house, and sets up housekeeping with his family, with the design of remaining there until he has completed a certain job of work, he becomes an actual resident of that county, within the meaning of the statute in question; and that, too, notwithstanding his domicile may be in another county, to which he intends to return upon the completion of the job."

This is not because § 14 had repealed the other section but simply because in the circumstances the provisions of § 14 were by their terms precisely applicable to persons in the position of the appellee, and if they applied, those of the other section could not.

If it were to be held that appellee was not one who "actually resided" in the United States, within the meaning of § 231, supra, because of his original unlawful entry into continental United States, we must then inquire where his lawful domicile actually was. Under the common American rule that one domicile is not lost until another is acquired,[3] the appellee still retained his domicile in Hawaii which, by definition, is a portion of the United States.[4] When he entered on November 22, 1947, his rights, by reason of the provisions of § 14 of the Philippine Independence Act, were precisely the same as those of an alien citizen of any other country. His domicile for permanent residence in the Hawaiian Islands was a domicile within the United States, and he could not be prohibited from entering at Norfolk, Virginia, any more than if he had been a British, French or Dutch citizen having a similar lawful domicile in Hawaii.

In our view the attempted deportation was without legal authority and the judgment of the court below must be and is affirmed.

---

3. See Beale, Conflict of Laws, Vol. 1, § 23.1. Appellant argues that by his departure from Hawaii without an intent to return, appellee abandoned and lost his domicile in Hawaii, citing United States ex rel. Alther v. McCandless, 3 Cir., 46 F.2d 288, 290. That case turned on the definition of the words, "temporary visit" in Title 8 U.S.C.A. § 210. It would not support any special rule as to loss of domicile. The English rule as to abandonment of domicile of choice and revival of domicile of origin has no standing in this country. See Beale, Conflict of Laws, Vol. 1, § 23.3 and Restatement, Conflict of Laws, § 23.

4. Title 8 U.S.C.A. § 224(a).