**John J. HAGGERTY, Plaintiff,**

v.

**PRATT INSTITUTE, Defendant.**

No. 73 C 66.

United States District Court,
E. D. New York.

March 26, 1974.

Siben & Siben, Bay Shore, N. Y., for plaintiff.

Berman & Frost, New York City, for defendant.

## MEMORANDUM ORDER

NEAHER, District Judge.

At a pre-trial conference on January 22, 1974, counsel for defendant raised the issue of the court's subject matter jurisdiction in this case. Pursuant to Rule 12(h)(3), F.R.Civ.P., the parties were directed to submit briefs and affidavits on the question. Having considered the parties' submissions, the court finds it is without subject matter jurisdiction and therefore dismisses the action.

In his complaint plaintiff alleged he "is a resident citizen of Sault Saint Marie, Province of Ontario, Canada." [1] He based jurisdiction "upon diversity of citizenship as hereinabove alleged," citing 28 U.S.C. § 1332. [2] The only fair and reasonable reading of these statements is that plaintiff asserts jurisdiction under 28 U.S.C. § 1332(a)(2), diversity between citizens of a state and citizens or subjects of a foreign state. Indeed, plaintiff defends the jurisdictional attack solely on such diversity. Hence, there is no need to look into the question of jurisdiction under 28 U.S.C. § 1332(a)(1). [3]

The affidavits are clear in establishing beyond dispute that plaintiff presently has the status of a "landed immigrant" in Canada. His Canadian Immigration Identification Card shows he has had that status since March 26, 1970, when, as a United States citizen, he left this country, approximately three years before this action was commenced. While there is some dispute over whether plaintiff still considers himself a citizen of New York or the United States, the affidavits adequately establish additionally (1) that plaintiff was domiciled in Canada at the time this action was commenced, January 12, 1973; (2) that plaintiff is not yet qualified for Canadi-

1. Plaintiff's complaint, para. 3.

2. *Id.*, para. 4.

3. However, the court also finds jurisdiction under this section lacking as well. *See* the discussion, *infra*.

an citizenship, which appears to require five years of landed immigrant status; and (3) that plaintiff has made no written or otherwise entirely unambiguous, outright renunciation of his United States citizenship.

The court concludes from these uncontroverted facts that plaintiff is neither a citizen nor subject of a foreign state within the meaning of § 1332(a)(2), and that lacking the requisite diversity of citizenship, the action must be dismissed. Bishop v. Averill, 76 F. 386 (Cir.Ct.D.Wash.1896). In that case the defendant had moved to Canada from Washington and was domiciled there. The court found diversity lacking because the defendant had not actually obtained foreign citizenship, despite his intent to do so.

In Pemberton v. Colonna, 189 F.Supp. 430 (E.D.Pa.1960), aff'd, 290 F.2d 220 (3 Cir. 1961), the district court found that plaintiff was domiciled in Mexico, but was not a citizen of Mexico. The court rejected plaintiff's contention that "citizen" in § 1332(a)(2) referred to domicile, and held that the term referred to *actual* citizens of foreign states. *Id.,* 189 F.Supp. at 432. The Third Circuit affirmed, stating that "a citizen of the United States who is domiciled abroad is not a citizen of the country where he makes his home. To do that he must renounce his United States citizenship and acquire citizenship in the foreign country." *Id.,* 290 F.2d at 221.

In a similar case, the words "subject" and "citizen" were construed to be equivalents, both as to Article III and the Judicial Code. Van der Schelling v. United States News & World Report, Inc., 213 F.Supp. 756 (E.D.Pa.), aff'd per curiam, 324 F.2d 956 (3 Cir. 1963), cert. denied, 377 U.S. 906, 84 S.Ct. 1166, 12 L.Ed.2d 177 (1964). The district court traced at length the historical justification for a reference to "subjects" as well as "citizens," and found no reason to think that the use of two words was meant to be more than recognition of differing types of governments. *Id.,* 213 F.Supp. at 760. The court also not-

ed that since such a foreign domiciliary can still sue in our State courts as a "native," then a wrong to him was unlikely to cause any diplomatic problems with his new domicile's government. *Id.,* 213 F.Supp. at 759. This result seems to be in general agreement with other cases that have dealt with the problem. See 1 Moore's Federal Practice ¶¶ 0.74 [4] and 0.75 [1.–3] (2d ed. 1973). Professor Wright likewise interprets the cases. Wright, Federal Courts § 24 at 80–81 n. 7 (2d ed. 1970).

The requirement of *actual* citizenship in the foreign state was articulated in Hammerstein v. Lyne, 200 F. 165 (D. Mo.1912). In finding the defendant to be neither a citizen of a state nor an alien, and hence that original jurisdiction was lacking, the court held that one's intention to become a foreign citizen was not enough to invoke the alienage jurisdiction, because such intention was not by itself enough to forfeit one's rights to the protections of our courts or government. The court said that such an intention must be accompanied by some unequivocal act on the part of the citizen seeking or suffering expatriation. *Id.* at 171–172 (citing approvingly from a case which held that becoming a citizen or subject of the foreign power was necessary).

However, the actual citizenship requirement may also be viewed as no more than the logical result of the fact that "citizen" and "subject" mean the same thing, and the requirement of foreign citizenship cannot be avoided by showing some in-between status such as landed immigrant. See Van der Schelling v. United States News & World Report, *supra,* where, after a lengthy look at the cases, the court noted that most presume one cannot be a citizen of the United States and another country at the same time. 213 F.Supp. at 762.

Perhaps the most significant problem with the above interpretation is the resulting anomaly that a plaintiff, having lost his state citizenship by acquiring a foreign domicile but not foreign citizenship, has lost his right to sue on diversi-

ty grounds under § 1332(a)(1) in addition to his failure to acquire § 1332(a)(2) rights. Thus, he is denied a federal forum where his neighboring foreign citizen would not be. See 1 Moore's Federal Practice ¶ 0.74 [4] at 708.4 (2d ed. 1973). There is something to this, especially when the result is as harsh as it was in *Van der Schelling,* where a new action in the State courts was barred by the statute of limitations. 213 F.Supp. 763.

Nevertheless, had plaintiff's counsel investigated the matter before seeking a federal forum, he would have found a solid wall of judicial construction of § 1332(a)(2) against him. The court sees no compelling reason to disturb these precedents.[4]

In this case, plaintiff has failed in his burden of proving that the case had the requisite diversity of citizenship, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L. Ed. 1135 (1935), at the time of the commencement of the action, Louisville, N. A. & C. R. Co. v. Louisville Trust Co., 174 U.S. 552, 19 S.Ct. 817, 43 L.Ed. 1081 (1899); Wright, *supra* § 28. The uncontroverted facts establish that he was not an actual citizen of Canada at that or any other time. Nor has plaintiff demonstrated any act, outside of his own frame of mind, which would show unequivocally that prior to the commencement of this action he had renounced his United States citizenship. Hence plaintiff does not meet the requirements of § 1332(a)(2).

Nor can plaintiff successfully switch (and he has not chosen to do so) to § 1332(a)(1). By virtue of his Canadian domicile at the time of the commencement of the action, plaintiff has, as previously indicated, lost his state citizenship for diversity purposes even though he retained his national citizenship. Pemberton v. Colonna, *supra,* 189 F. Supp. at 431–432.

---

4. Nor has the American Law Institute, for that matter, in its oft-cited study of federal and State court jurisdiction. *See* ALI,

Accordingly, the action must be dismissed for lack of subject matter jurisdiction.

So ordered.

Study of the Division of Jurisdiction Between State and Federal Courts 111–12 (1969).