**Dr. Jean E. SMITH, Plaintiff-Appellant-Cross Appellee,**

v.

**Larry CARTER, Defendant-Appellee-Cross Appellant.**

**No. 75–2087.**

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1977.

Fred M. Bush, Jr., Tupelo, Miss., Norman Sepenuk, Portland, Or., for plaintiff-appellant-cross appellee.

Paul M. Moore, Calhoun City, Miss., Armis E. Hawkins, Houston, Miss., for defendant-appellee-cross appellant.

Before COLEMAN, GODBOLD and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The sole question presented in this appeal is whether a United States citizen who is a permanent resident of Canada may invoke the diversity jurisdiction of a federal district court under 28 U.S.C. § 1332(a) to maintain a civil action against a citizen of the State of Mississippi. The plaintiff-appellant, Dr. Jean E. Smith, is a professor of political economy at the University of Toronto, Canada, and a novice in the cattle business. On January 24, 1974, Larry Carter, a Mississippi citizen, instituted a replevin action against Dr. Smith in Mississippi, seeking the recovery of 109 head of cattle previously sold to Dr. Smith, and for which Carter had not been paid. Claiming diversity of citizenship, on February 7, 1974, Dr. Smith sought and obtained a removal of the cause to the United States District Court for the Northern District of Mississippi. In addition, he subsequently brought a civil action against the appellee, Carter, in the same United States District Court, again claiming diversity of citizenship, and alleging fraudulent misrepresentation and concealment in the sale by defendant of diseased cattle.

The defendant-appellee answered Dr. Smith's complaint, denying fraud and asserting a counterclaim against plaintiff as to other cattle transactions between the parties. By order of May 30, 1974, the district court combined these two actions. Before trial, defendant moved to dismiss Dr. Smith's complaint on the ground that plaintiff was a United States citizen residing in Canada, was not a resident of any particular state of the United States, and that the requisite diversity of citizenship under 28 U.S.C. § 1332(a)(2) was lacking.

On April 9, 1974, after a hearing, Judge Keady granted defendant Carter's motion to dismiss for lack of diversity jurisdiction and certified his judgment for immediate appeal pursuant to 28 U.S.C. § 1292(b). On May 9, 1974, Judge Keady issued a further order in which he remanded the original replevin action to the Circuit Court of Chickasaw County, Mississippi. The district court, however, stayed the order of remand in the replevin case pending appeal to this court of the diversity question in Dr. Smith's companion case. Dr. Smith is appealing from both of Judge Keady's orders, and Carter cross-appeals only that portion of the order of May 9, 1975, which stays the remand of the replevin action pending appeal.

Appellant, Dr. Smith, is a United States citizen who resided in New Hampshire until

1965, when he moved to Toronto, Canada. In 1968, he achieved the academic rank of full professor with permanent tenure. In 1972, he became a "landed immigrant" of Canada, a necessary preliminary for becoming a Canadian citizen. Appellant's family resides with him in their family dwelling in Toronto and, although he is ineligible to vote in Canada, appellant has taken an active part in Canadian civic and political affairs.

## I.

Plaintiff's claim of diversity is based on Article III, Section 2, of the Constitution and 28 U.S.C. § 1332(a), the statutory implementation thereof. Article III, Section 2 authorizes federal jurisdiction in controversies "between a State, or the Citizens thereof, and foreign States, Citizens or Subjects," and § 1332(a) provides as follows:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000 . . . and is between . . . citizens of a State, and foreign states or citizens or subjects thereof.

Since appellant is neither a citizen of any particular state nor a citizen of Canada, he asserts that diversity jurisdiction exists on the basis of his status as a foreign subject. The district court was not persuaded by this contention, however, finding instead that the word "subject" did not establish a separate category, distinguishable from the "citizen" category, under which appellant could invoke diversity jurisdiction. The court held that the words "citizen" and "subject" have equivalent meanings, the only difference between them lying in the form of government under which a person lives. Under the district court's interpretation, those who live under and owe allegiance to a monarch are subjects and those who live under and owe allegiance to a republican government, such as the United States, are citizens. The court noted that:

> [W]hether or not there is basic wisdom or logic in the jurisdictional scheme, the Constitutional makers, our founding fathers, were once all subjects of King George III; immediately upon the Declaration of Independence they become citizens of their respective states; at the later formation of the United States Constitution, they also became citizens of the United States. The founding fathers were subjects of King George because he was the sovereign under the system of laws to which they owed allegiance. Only by the revolutionary change of government did they become citizens of the United States, when they swore fealty to the new sovereign, the United States Government and to the respective states of which they were residents.

The district court's interpretation of the term "subject" is fatal to appellant's cause of action; since he is not a Canadian citizen, under the district court's holding he cannot be a Canadian subject.[1] The holding of the district court is consistent with the long-standing rule set forth in *Van der Schelling v. U.S. News & World Report, Inc.,* 213 F.Supp. 756 (E.D.Pa.1963), *aff'd per curiam* 324 F.2d 956, (3d Cir. 1963), *cert. denied,* 377 U.S. 906, 84 S.Ct. 1166, 12 L.Ed.2d 177 (1964), that a United States citizen who is a permanent resident of a foreign country may not invoke federal diversity jurisdiction under 28 U.S.C. § 1332. Recognizing that *Van der Schelling* is the definitive authority on this subject, appellant urges this Court to depart from the interpretation adopted in Judge Lord's 1963 decision. The district court, however, carefully considered appellant's position and, after hearing oral argument, declined to disagree with *Van der Schelling.* We affirm.

---

1. We note that appellant has attained "landed immigrant" status, which he has described as a necessary preliminary status for becoming a Canadian citizen. In this connection, we presume that appellant could become a Canadian citizen by meeting the appropriate requirements of the Canadian government. Appellant contends, however, that he need not attain "citizen" status to invoke the diversity jurisdiction of the federal courts, since, as a permanent resident of Canada, he is a Canadian "subject" as that term is used in the Constitution and 28 U.S.C. § 1332(a).

## II.

In support of his argument that the district court opinion should be reversed, appellant places great emphasis on historical differences in the usage of the terms "citizen" and "subject." Although these terms undoubtedly have been used in different contexts and with different shades of meaning over the years, we believe that the interpretation reached in *Van de Schelling* is accurate. Moreover, the usage set forth in other judicial interpretations is the most relevant authority for our purposes. In this respect, we conclude that the basic underpinnings of *Van der Schelling* and its progeny are sound.[2] In *Van der Schelling*, Judge Lord reviewed remarks of Alexander Hamilton contained in "The Federalist," No. 80, as well as statements made by James Wilson in the debates in Pennsylvania concerning the adoption of the Constitution. From these he concluded:

> Two things are immediately apparent. First, both Hamilton and Wilson in discussing Article III, Section 2, refer to citizens, subjects and foreigners interchangeably. These references, it seems to me, are an equation, perhaps unconscious, in the minds of the framers that "citizen" and "subject" mean the same thing. Second, if the main purpose [of the diversity provision of Article III] was to provide a national forum with the object of preserving the peace, it seems hardly likely that a foreign sovereign or government would become martially exorcised over a wrong to a citizen of the United States who can go into his native courts as a native. 213 F.Supp. at 759 (footnote omitted).

Judge Lord also reviewed the legislative history of the Judiciary Act of 1789, which first implemented Article III of the Constitution, and concluded that the Constitutional provision did not cover American citizens domiciled abroad. He observed that the 1789 legislation provided federal access where the suit was between a citizen of the United States and *aliens*, a statutory designation which persisted until the Act was amended in 1875. Finding no reason to suppose that Congress deliberately failed to exercise a power given by the Constitution, he found an inference that those who stood close to the framing of the Constitution intended to exhaust the grant of federal jurisdiction. He deduced that the framers, by using the term "aliens," had embraced "citizens or subjects," as constitutionally used in Article III. We find no good reason to disagree with Judge Lord's conclusions.

■ Appellant contends that *Van der Schelling* created an anomaly of federal jurisdiction which should be corrected by this court. Under the present rule, an American citizen living abroad is precluded from invoking the diversity jurisdiction of the federal courts, while foreign citizens having no connection with the United States may do so. Of the *Van der Schelling* rule, Professor Moore has stated:

> . . . [I]t does appear anomalous that aliens may invoke federal jurisdiction against state citizens, but not against United States citizens who are not citizens of a state; and that United States citizens who are not domiciliaries of the same state as their adversary, nor of any other state, may not avail themselves of the protection and benefits of the federal courts, at least on the basis of diversity jurisdiction.[3]

We too recognize the anomaly of the existing rule under *Van der Schelling*, but we concur with Professor Moore's suggestion that Congress is the appropriate body to make such a change.[4]

---

2. The district courts have consistently followed *Van der Schelling: Mohr v. Allen*, 407 F.Supp. 483, 487 (S.D.N.Y.1976); *Kaufman v. Gootrad*, 397 F.Supp. 1054, 1055 (S.D.N.Y.1975); *Haggerty v. Pratt*, 372 F.Supp. 760, 761 (E.D.N.Y. 1974); *Farner v. Gentzsch*, 355 F.Supp. 349, 353 (E.D.Penn.1972); *Milton E. Rayfield v. Watson Seafood & Poultry Co.*, 268 F.Supp. 97, 103 (E.D.N.C.1967); *Twentieth Century-Fox Film Corp. v. Taylor*, 239 F.Supp. 913, 914 (S.D.N.Y.1965) (dictum).

3. 1 J. Moore, Federal Practice ¶ .74[4], at 708.4 (2d ed. 1948).

4. After many years, a similar anomaly was corrected when Congress decreed that "States" "includes the Territories, the District of Colum-.

We are especially reluctant to reverse an existing interpretation which has remained unchanged for over 12 years. We note that during this period Congress has not seen fit to amend Section 1332(a) in the manner suggested. Moreover, the American Law Institute, in its study of federal and State court jurisdiction, has not recommended the change sought by appellants in this case.[5]

### III.

In conclusion, we wish to remark briefly on appellant's argument that the interpretation of the district court (*i. e.,* that citizens live in republics and subjects in monarchies) lacks semantic precision. We are persuaded by appellee's argument that the term "subject to" is significantly different in meaning from "subject of." It is readily apparent that appellant, as a resident alien, is *subject to* the laws of Canada while he lives within its territory and enjoys the benefits of its government. Nonetheless, since he has neither renounced his United States citizenship nor applied for citizenship in Canada, he is not a *subject of* Canada.

In addition to the diversity question raised in this appeal, appellee cross-appeals that portion of the district court's order which undertook to stay the remand of the replevin action pending appeal. In view of our decision on the diversity question, however, we find it unnecessary to determine whether such an order was available to the district court.

AFFIRMED.

bia, and the Commonwealth of Puerto Rico," thus permitting domiciliaries of such areas, for purposes of diversity jurisdiction, to sue or be sued on the same basis as citizens of a state. It may be that subjects can be validly defined by Congress to include United States citizens who are domiciled in a foreign country. *Id.* (footnote omitted).

5. See ALI, Study of the Division of Jurisdiction Between State and Federal Courts 111–12 (1969) *noted in Haggerty v. Pratt Institute,* 372 F.Supp. 760, 762 n. 4 (E.D.N.Y.1974).