Thomas GREGG, Jr., Plaintiff-Appellant,

v.

LOUISIANA POWER AND LIGHT COMPANY, Defendant-Appellee.

No. 79–2505.

United States Court of Appeals, Fifth Circuit.

Oct. 3, 1980.

David E. Caruso, Jr., New Orleans, La., for plaintiff-appellant.

Monroe & Lemann, Kenneth P. Carter, New Orleans, La., for defendant-appellee.

Before CHARLES CLARK, TJOFLAT and GARZA, Circuit Judges.

GARZA, Circuit Judge:

The question before us on this appeal is whether, for purposes of diversity jurisdiction, a United States citizen, born to migratory parents, acquires the citizenship of the State of his birth and, if so, whether he loses that State citizenship without acquiring a new citizenship or domicile. This case arises from the personal injuries sustained by plaintiff-appellant, Thomas Gregg, Jr., caused by contact with a high voltage electrical transmission line maintained by defendant-appellee, Louisiana Power & Electric (LP&L). Federal jurisdiction was alleged on grounds of diversity of citizenship under 28 U.S.C. § 1332.

It is undisputed that LP&L is a citizen of Louisiana for diversity purposes. It is also undisputed that Gregg is *not* a citizen of Louisiana.[1] Instead, LP&L argued in its motion to dismiss and now on appeal that, because Gregg's parents were migratory workers at the time of his birth, Gregg acquired no domicile or citizenship by birth. LP&L also argues that, because Gregg has migrated from State to State, he has never acquired a domicile by choice and, therefore, Gregg is not a citizen of *any* State and, because of that fact, he cannot affirmatively establish diverse citizenship.

The record shows that Gregg was born in Kentucky but, in early childhood, moved to various States with his parents. At that time, Gregg's father was a painter, whose job required him to travel from one location to the next in pursuit of employment. At one time, the Greggs moved to Michigan, where they had close family and friends, and where Gregg, Jr. attended some school and developed many personal attachments. By helping his father, Gregg learned the painting profession and, as a young adult, he began traveling from place to place in search of painter's work.

The uncontroverted affidavits of Gregg and his father, filed in response to LP&L's motion to dismiss, refer to Michigan as being their "real home." On the other hand, Gregg's father's affidavit also states that

---

1. The jurisdictional portion of Gregg's complaint does not aver that Gregg is a citizen of any particular State, but it does specifically state that his citizenship is not that of Louisiana (the citizenship of LP&L) and that jurisdiction exists on the basis of diversity. Although it is preferable to aver the party's State of citizenship, it is not a jurisdictional prerequisite, so long as actual diversity is proven to the Court when jurisdiction is questioned.

his home was Louisville, Kentucky, at the time Gregg, Jr. was born and that he, Gregg, Sr., intended to remain in Kentucky with no fixed intention to leave at that time. Gregg argues that with these facts, the District Court should have considered him a citizen of Kentucky, but if there was any question due to his subsequent travel, he should have been considered a citizen of Michigan.

In granting LP&L's motion to dismiss, the District Court found that Gregg had failed to prove that his father was domiciled in Kentucky at the time of his birth and, therefore, Gregg had failed to establish Kentucky as his domicile of birth. The District Court also found that, although Gregg may have had an intention of being domiciled in Michigan by choice, he had failed to establish the concurrent residence requirement of domicile. In effect, the District Court held that Gregg was a Stateless citizen for diversity purposes.

Gregg asks us to adopt and enlarge the rule set forth in *Kaiser v. Loomis*, 391 F.2d 1007 (6th Cir. 1968), wherein it was held that an American citizen, born in one of the States of the United States to parents who were citizens of that State, cannot lose that citizenship which he acquired at birth, without first adopting a new domicile. Gregg also asks that this rule be enlarged, so as not to penalize him because of the migratory life-style of his parents at the time of his birth. In other words, he asks that he be considered a State citizen of his birth place, even though his parents might not be considered citizens of that State.

The basic principle underlying the *Kaiser* rule is currently applied by virtually all States in their conflicts rules and domestic relations law. A person is almost universally considered to be a domiciliary of the State of his birth, unless and until a new domicile is acquired. As applied in diversity cases, the rule would create a presumption of domicile by birth in the absence of a contrary averment. The policy and purpose of the presumption is to protect an individual from an unintended loss of State citizenship. See Wright, Miller & Cooper, *Federal Practice and Procedure* : Jurisdiction § 3612. If extended and applied in a diversity case, it would also serve to prevent the automatic exclusion of a large segment of our society—the migrant worker—from a neutral federal forum.

We adopt the *Kaiser* rule, and we extend the rule to hold that the presumption of domicile by birth shall include children of those parents who might not easily be defined as "citizens" of the State in which their children are born. A more restrictive presumption would open the federal diversity forum for those whose parents were fortunate enough to have a fixed home, and yet would deny that forum to those citizens whose parents' financial status required them to travel in search of employment—this latter group being the very citizens for whom the neutral federal forum is designed to protect.

The burden of proving diversity when challenged is upon the plaintiff, however, with application of a presumption of domicile by birth (a presumption established in this case by affidavits), the burden of proving non-diversity shifts to the defendant. *Stine v. Moore*, 213 F.2d 446 (5th Cir. 1954). LP&L will have the chance to meet this burden on remand.

REVERSED and REMANDED for proceedings not inconsistent with this opinion.