**Grace WILLIS, Plaintiff,**

v.

**WESTIN HOTEL COMPANY, Westinghouse Electric Corporation, Individually and d/b/a Millar Elevator Company and Millar Elevator Industries, Inc., Defendants.**

No. 85 Civ. 2056 (CBM).

United States District Court, S.D. New York.

Sept. 8, 1986.

MacDonald, Jaekel, Seavers & Ford by Joseph J. MacDonald, Ridgewood, N.J., for plaintiff.

Hinckley & Silbert, P.C. by Michael Sena, New York City, for defendant Westin Hotel Co.

J.M. Furey & R.J. Furey, P.C. by Brian Furey and Brian Kerley, Hempstead, N.Y., for defendant Millar Elevator Co.

## OPINION

MOTLEY, Chief Judge.

Plaintiff, a 72 year old woman, has brought this suit in diversity for personal injuries suffered in September 1984 while exiting from an allegedly defective elevator at her residence at the Plaza Hotel in New York City. Defendant Westin Hotel Company is the owner of the Plaza Hotel. Defendant Millar Elevator Company, which manufactured and serviced the elevator in question, is a wholly owned subsidiary of defendant Westinghouse Electric Corporation.

Defendants Westin and Millar have now moved for dismissal of this suit pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, claiming that the requisite diversity of citizenship between the parties does not exist. Specifically, defendants challenge plaintiff's claim to be a citizen of Florida for diversity purposes. Defendants argue that plaintiff is actually a

citizen of New York, a fact that would destroy the requisite complete diversity in this case in light of the New York citizenship of certain of the defendants. In the alternative, suggest defendants, plaintiff is not a citizen of *any* state for diversity purposes, and is thus not entitled to invoke federal diversity jurisdiction.

After oral argument and a full hearing at which plaintiff appeared and testified, the court has concluded for the reasons that follow that plaintiff is a citizen of Florida. Accordingly, the requisite diversity of citizenship between the parties having been shown, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

FACTS

Plaintiff, Grace Willis, was unquestionably a resident and citizen of Florida until 1977. For several years up until that date plaintiff had lived in an apartment in Florida. In addition, she had paid her taxes there, had a Florida drivers' license, had voted there when she did, and was a registered member of the Florida Republican Party. Furthermore, in 1973 when she was divorced, the Florida court granting the divorce decree named her as a Florida domiciliary.

Beginning in 1977, however, plaintiff began to lead an unusually transient life. She gave up her apartment and from that time on lived exclusively in luxury hotels, dividing her time between Palm Beach, Hawaii, and Manhattan. Although plaintiff would stay in each location for many months at a stretch, she resided at the hotels almost entirely on a day to day basis. Plaintiff continued to pay taxes as a Florida citizen though, maintained a Florida mailing address (a post office box), and kept up various other ties to the state such as storing her furniture there, using a Florida stockbroker, lawyer and accountant, and having a Florida bank account. All of these Florida ties, including the tax relationship and the mailing address, continued past the time of this lawsuit's filing in April 1985.

At the time this action was commenced, plaintiff had resided in Manhattan for approximately two years except for a brief period in the spring of 1984. Except for this two month visit to Florida in 1984, plaintiff lived in New York at the Plaza Hotel on a day to day basis continuously from May or June 1983 until September 1984 when her accident occurred. After her accident and following her release from the hospital in October 1984, plaintiff continued her New York residence for over a year more at a different hotel on a residential basis.

Plaintiff maintains two bank accounts in New York. Her Social Security checks are deposited in these accounts as are substantial amounts from stock dividends and other stock market gains. In the years preceding the commencement of this lawsuit, these New York bank accounts show significant activity, in terms of both withdrawals and deposits. Plaintiff also maintains a safe deposit box with one of her New York banks. The bank records reveal numerous visits by plaintiff to this safe deposit box between 1983 and the filing of this lawsuit. An additional financial contact plaintiff maintains in New York is her brokerage account with a New York stockbroker.

Plaintiff claims to be a citizen of Florida, and to have been a Florida citizen at the inception of this litigation. She describes her lengthy stays in New York City as a matter essentially of summering here, or else of being compelled to remain for health reasons. Although plaintiff concedes that the medical compulsion for her long continued stay in New York was not specifically related to doctors' instructions, given plaintiff's advanced years and the severity of her accident and other medical problems, the court finds credible plaintiff's claim that her extended stay in New York City after September 1984 was not purely a matter of preference, much less of intent to make New York her home. The court also finds credible plaintiff's assertion that but for her accident she would have returned to Florida in the fall of 1984, and her statement that as of the time this action was initiated in April 1985, she in-

tended to return to Florida and rent an apartment there.

The citizenship of defendants is not contested. Defendants are variously Delaware and Pennsylvania corporations. As asserted in the pleadings and affidavits submitted in this case, the principal place of business of defendant Westin Hotel Company is Washington, while the principal place of business of both Westinghouse and Millar Elevator Corporation is New York.

DISCUSSION

■■■ As the party seeking to invoke this court's subject matter jurisdiction under 28 U.S.C. Section 1332, plaintiff has the burden of proving that complete diversity of citizenship exists between the parties. *See Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 702 (1st Cir.1979); *Cf. Thomason v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979). Complete diversity is a state of affairs where all plaintiffs are citizens of different states from all defendants. *Geidel Fuel Oil Corp. v. Peninsula National Bank*, 581 F.Supp. 19, 20 (E.D.N.Y.1984). The diversity of the parties is determined as of the date of the filing of the lawsuit. See *Haggerty v. Pratt Institute*, 372 F.Supp. 760, 762 (E.D.N.Y.1974); *Huddleston v. Angeles Cooperative Creamery*, 315 F.Supp. 307, 308 (W.D.Wash.1970).

■■■ Under 28 U.S.C. Section 1332(c), a corporation is deemed a citizen both of its state of incorporation and of the state where its principal place of business is located. Thus, for diversity purposes, defendants Westinghouse and Millar Elevator are both citizens of New York. If plaintiff is found to be a New York citizen, complete diversity of citizenship will be lacking. In the alternative, if plaintiff is found to be a citizen of no state, this suit will also fail for lack of subject matter jurisdiction because the diversity statute specifically requires that the suit be between citizens of different states. *See Mohr v. Allen*, 407 F.Supp. 483 (S.D.N.Y.1976).

■■■ For diversity purposes, it is well-established that the citizenship of an individual is equivalent to her domicile. *Yonofsky v. Wernick*, 362 F.Supp. 1005 (S.D.N.Y. 1973); *Broadstone Realty Corp. v. Evans*, 213 F.Supp. 261, 265 (S.D.N.Y.1962). *See also Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1116 n. 12 (S.D.N.Y.1982) (under the diversity statute, a person is a "citizen of a state" if he is a citizen of the United States and a domiciliary of a state of the United States). Domicile is defined by residence in fact along with the intent to remain there or to return when absent. *See, e.g., Kaufman & Broad, Inc. v. Gootrad*, 397 F.Supp. 1054, 1055 (S.D.N.Y. 1975). An individual's residence at the time a lawsuit is commenced provides *prima facie* evidence of his domicile. *See District of Columbia v. Murphy*, 314 U.S. 441, 455, 62 S.Ct. 303, 309, 86 L.Ed. 329 (1941); *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir.1972); *Broadstone Realty Corp. v. Evans*, 213 F.Supp. 261, 265 (S.D. N.Y.1962).

■■■ Domicile must be established by the totality of the evidence of a person's contacts with a state and of his intent to remain there. *See, e.g., Simmons v. Skyway of Ocala*, 592 F.Supp. 356, 358–59 (S.D.Ga.1984); *Krasnov. v. Dinan, supra; Broadstone Realty Corp. v. Evans, supra.* Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of intent to make it one's home, of course, cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent. *See, e.g., Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555–556 (5th Cir.1985); *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir.1972).

Under these traditional tests for determining domicile, this court is initially inclined to find that plaintiff is not a citizen of any state for purposes of this action. Although plaintiff possesses a certain quantity of contacts with both New York and Florida, whether or not at the time this lawsuit was filed she in fact possessed the

necessary intent to be considered a citizen or a domiciliary of either New York or Florida appears somewhat dubious. Instead, her transient life style might tend to place plaintiff in that limited class of persons who though citizens of the United States are not citizens of any individual state of the Union.

It has long been recognized that the literal requirement of 28 U.S.C. Section 1332(a)(1) that a lawsuit in diversity be between citizens of different states, may preclude the invocation of diversity jurisdiction by a person who though a United States citizen is not a state citizen, because not a domiciliary of any individual state. *See, e.g., Simmons v. Rosenberg,* 572 F.Supp. 823, 824 (S.D.N.Y.1983); *Mohr v. Allen,* 407 F.Supp. 483 (S.D.N.Y.1976); *Cowell v. Ducas,* 2 F.Supp. 1, 2 (S.D.N.Y. 1932); *see also Wasson v. Northrup Worldwide Aircraft Services, Inc.,* 443 F.Supp. 400 (W.D.Tex.1978); *Tanzymore v. Bethlehem Steel Corp.,* 325 F.Supp. 891, 892–93 (E.D.Pa.1971), *aff'd.* 457 F.2d 1320 (3d Cir.1972); *Pemberton v. Colonna,* 189 F.Supp. 430 (E.D.Pa.1960), aff'd. 290 F.2d 220 (3d Cir.1972) (*per curiam* ); *Pannill v. Roanoke Times Co.,* 252 F. 910 (W.D.Va. 1918). Plaintiff's situation would seem to fall within this "stateless person" doctrine, thus entirely barring plaintiff from access to federal diversity jurisdiction, at least at the time this lawsuit was filed.

Such an outcome, based on a finding that plaintiff has failed to prove she is a citizen of *any* state is problematic, however. The overwhelming majority of cases applying this "stateless person" doctrine to preclude diversity jurisdiction have involved situations where the individual, although a United States citizen, was found to be a domiciliary of a foreign nation. *See, e.g., Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980); *Simmons v. Rosenberg,* 572 F.Supp. 823 (S.D. N.Y.1983); *Berhalter v. Irmisch,* 75 F.R.D. 539 (W.D.N.Y.1977); *Mohr v. Allen,* 407 F.Supp. 483 (S.D.N.Y.1976); *Haggerty v. Pratt Institute,* 372 F.Supp. 760 (E.D.N.Y. 1974); *Pemberton v. Colonna,* 189 F.Supp. 430 (E.D.Pa.1960). Thus, the lack of state domicile was the direct counterpart of the existence of foreign domicile. The notion that an individual might have no domicile whatsoever did not arise.

The court has discovered only three cases where the possibility that a United States citizen and resident might be precluded altogether from invoking diversity jurisdiction because of her "statelessness" was even considered. *Wasson v. Northrup Worldwide Aircraft Services, Inc.,* 443 F.Supp. 400 (W.D.Tex.1978); *Tanzymore v. Bethlehem Steel Corp.* 325 F.Supp. 891 (E.D.Pa.1971), aff'd 457 F.2d 1320 (3d Cir. 1972); *Pannill v. Roanoke Times Co.,* 252 F. 910 (W.D.Va.1918). *Cf. Cowell v. Ducas,* 2 F.Supp. 1 (S.D.N.Y.1932) (inadequacy of pleadings that asserted only plaintiff's United States residence rather than state citizenship). Of these cases, only *Pannill,* a 1918 district court decision, actually relied on this "stateless" rationale to deny diversity jurisdiction to a person with a transient lifestyle. Moreover, the Third Circuit, in affirming the lower court's denial of diversity jurisdiction in *Tanzymore,* expressly declined to characterize the lower court opinion as having held that a United States citizen and resident could be denied domiciliary status and thus diversity jurisdiction merely because of his transient life style. 457 F.2d 1320, 1324 (3d Cir.1972). Instead, explained the Circuit panel, the outcome below had been the result merely of plaintiff's failure to carry his burden of proof as to the particular state domicile claimed. In the remaining case, *Wasson v. Northrup Worldwide Aircraft Services, Inc.,* 443 F.Supp. 400 (W.D.Tex.1978), the court discussed at length the possibility that an American citizen and resident might be barred from access to federal diversity jurisdiction as a consequence of his transient life style but openly criticized this outcome. While noting that a plaintiff's consistent mobility might make it logically sound to deny such a person access to diversity jurisdiction, the court commented that this was one aspect of diversity jurisdiction " 'inherently not founded in reason.' " *Id.* at 405 n. 13 (quoting 13 Wright, Miller & Cooper, *Fed'l Practice*

*and Procedure:* Jurisdiction, Section 3612 at 722). The *Wasson* court then went on to conclude that while plaintiff could not satisfy his burden of proving citizenship of one state, he would be able to do so with an alternate state where his contacts, though tenuous, were more substantial.

On this same issue of whether an American citizen and resident can be deemed stateless for diversity purposes, there is significant positive authority which would seem to obviate such a possibility. At least three circuit courts have ruled as a matter of law that it is impossible for a United States resident to be without any domicile whatsoever; these courts have held that a person may not lose his state citizenship without first acquiring some new domicile. *Gregg v. Louisiana Power and Light Co.,* 626 F.2d 1315 (5th Cir.1980); *Kaiser v. Loomis,* 391 F.2d 1007 (6th Cir.1968); *Barber v. Varleta,* 199 F.2d 419, 423 (9th Cir. 1952). *See also Carter v. McConnel,* 576 F.Supp. 556 (D.Nev.1983); *Unanue v. Caribbean Canneries, Inc.,* 323 F.Supp. 63, 68 (D.Del.1971); *Campbell v. Oliva,* 295 F.Supp. 616, 618 (E.D.Tenn.1968); *Broadstone Realty Corp. v. Evans,* 213 F.Supp. 261, 265 (S.D.N.Y.1962) (domicile in one state continues until a new domicile is shown to have been established).

■ These holdings are consistent with the Supreme Court's broad holding, albeit in a context not involving diversity jurisdiction, that "[a] domicile once existing continues until another is acquired," and that concomitantly, "[a] person cannot be without legal domicile somewhere." *Desmare v. United States,* 93 U.S. (3 Otto.) 605, 610, 23 L.Ed. 959 (1877). Although the Second Circuit appears not to have ruled on this precise issue, the reasoning of these cases and their underlying policy upholding the right of federal court diversity jurisdiction to all who are both American citizens and residents, strongly tends to discourage a finding that any citizen of the United States who is also a resident could somehow find himself without domicile entirely simply by taking up a vagabond lifestyle.

The court thus declines to find that plaintiff was incapable, as a "stateless person," of invoking this court's diversity jurisdiction in April 1985 when this lawsuit was filed.

The question before the court, therefore, reduces itself simply to whether plaintiff was a New York domiciliary in April 1985, or a Florida domiciliary. Applying the well-established law in this area, it is clear that the answer must be Florida.

■ No one appears to dispute that plaintiff was a citizen of Florida until at least 1977. While plaintiff's situation has changed significantly since this time, her 1977 citizenship is extremely relevant to the question of her citizenship in April 1985. A person may not lose state citizenship without first acquiring a new domicile. *See Desmare v. United States,* 93 U.S. (3 Otto.) 605, 610, 23 L.Ed. 959 (1877). The law presumes that once established a person's state domicile continues until another one is acquired; clearly it is not destroyed by mere absence from the domicile state. *See, e.g., Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584 (1875); *Korn v. Korn,* 398 F.2d 689 (3d Cir.1968); *Carter v. McConnel,* 576 F.Supp. 556, 558 (D.Nev.1983); *Campbell v. Oliva,* 295 F.Supp. 616, 618 (E.D.Tenn.1968). Furthermore, while a plaintiff has the overall burden of proving her citizenship for purposes of diversity, *see Hawes v. Club Ecuestre El Comandante, supra,* 598 F.2d at 702, on the question of whether a party has changed his established domicile the party seeking to prove the change has the burden. *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584 (1874).

The traditional tests for domicile lend some plausibility to defendants' claim that under the totality of the circumstances plaintiff abandoned her Florida citizenship some time subsequent to 1977, and by April 1985 was and intended to remain a New York citizen, notwithstanding her contrary representations to this court. Plaintiff's

long residence in New York State and her significant activities here during that time cannot be ignored. Defendants have failed to carry their burden of proof, however, that plaintiff ever changed her intended domicile from Florida to New York at any time subsequent to 1977. Even though in the two years prior to filing this lawsuit plaintiff resided in New York for a large majority of the time and, accordingly, had significant financial and personal contacts here, the court is not convinced that plaintiff ever intended to abandon her Florida domicile and make New York her home.

Up to the time of her accident plaintiff's New York accommodations were strictly on a day to day basis. Her continued stay in New York after the accident appears largely health related. Thus, despite its duration, plaintiff's long residence in New York was not of a nature to suggest an intent to abandon her Florida citizenship. In addition, plaintiff's continuation of her many financial and legal ties to Florida during this time, in the form of her tax relationship with that state and her mailing address there, among others, supports the conclusion that plaintiff did not abandon her Florida domicile. Finally, defendants' have failed to undermine sufficiently the credibility of plaintiff's testimony that she intended to return to Florida to convince this court that plaintiff's true intentions lay farther northward. Accordingly, the court finds that despite her New York residence, plaintiff was a Florida citizen at the time she filed this lawsuit.

CONCLUSION

The court having found that plaintiff was a citizen of Florida as of the date this lawsuit was filed, plaintiff has met her burden of proving complete diversity under 28 U.S.C. Section 1332 in light of the fact that none of the defendants in this case are Florida citizens. Accordingly, defendants' motion to dismiss this case for lack of subject matter jurisdiction is denied.