Robert M. **BOGAN** and Scott M. Bogan, Plaintiffs,

v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY and Austin E. Hodgkins, Jr., Defendants.**

No. 99 Civ. 5772(BDP).

United States District Court, S.D. New York.

June 22, 2000.

Michael S. Devorkin, Doar Devorkin & Rieck, New York City, for plaintiffs.

Timothy Coon, Bleakley Platt & Schmidt, White Plains, NY.

Peter Jason, Duane Morris Hecksher, Philadelphia, PA, for defendants.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiffs Robert M. Bogan and Scott M. Bogan bring this action against defendants Northwestern Mutual Life Insurance Company ("Northwestern") and Austin E. Hodgkins, Jr. ("Hodgkins") alleging, *inter alia*, wrongful termination, breach of contract, tortious interference with contract and unjust enrichment. The defendants move to dismiss the complaint for lack of subject matter jurisdiction. *See* Fed. R.Civ.P. 12(b)(1). For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

Since this litigation started in 1990, the parties have shared a lengthy and complex procedural history, which has included four separate actions in federal and state courts, extensive motion practice and appellate proceedings. It is not necessary to detail that complete history here, only to note that the current complaint, predicated on diversity jurisdiction, was filed on July 20, 1999, and a substantially identical complaint was filed at the same time in state court: Supreme Court, Westchester County.

Northwestern is a mutual life insurance company, which markets insurance and financial products through an independent contractor system under which agents contract with Northwestern to solicit business in specified territories. Defendant Hodgkins was one of six general agents for Northwestern in the New York metropolitan area who competed with each other to hire and train insurance agents.

Robert Bogan was an independent contractor who contracted with Hodgkins to act as a district agent in Hodgkins' territory. In addition, Scott Bogan was an independent contractor who contracted with Robert Bogan to act as sales agent in Bogan's district. The complaint alleges various state law claims against Northwestern and Hodgkins, each stemming from the termination of Robert Bogan as district agent on May 19, 1990, which in turn resulted in the termination of Scott Bogan's sales agent contract.

The defendants contend that this Court lacks subject matter jurisdiction as a consequence of the absence of complete diversity. There is no dispute that Scott Bogan is a citizen of Connecticut. Consequently, the existence of diversity revolves around whether Hodgkins was a New York or a Connecticut citizen on July 20, 1999, the date the complaint was filed. The parties made written submissions on the issue of diversity jurisdiction, and the Court held an evidentiary hearing on June 2, 2000, at which Hodgkins testified.

## DISCUSSION

### I. Legal Standard

28 U.S.C. § 1332(a)(1) provides that district courts have jurisdiction over civil matters between "citizens of different states" where there is complete diversity among all plaintiffs and all defendants. *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). The party invoking the court's subject matter jurisdiction—here, the plaintiffs—ultimately bears the burden of proving citizenship and, therefore, diversity. *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d

469, 476 n. 2 (2d Cir.1976). In defining a party's "citizenship," courts have held that it is synonymous with a party's "domicile." *See Linardos v. Fortuna,* 157 F.3d 945, 948 (2d Cir.1998).

The test for determining domicile is two-pronged: (1) residence in fact, coupled with (2) an intent to stay at that residence. *Id.* A person's domicile has often been defined as the "purpose to make the place of residence one's home," *Texas v. Florida,* 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817 (1939), or the place to which "wherever he is absent, he has the intention of returning." *District of Columbia v. Murphy,* 314 U.S. 441, 451, 62 S.Ct. 303, 86 L.Ed. 329 (1941). However, subjective statements of an intention to stay in a particular state are not sufficient to establish citizenship if "objective indicia of actual residence and intent" to reside elsewhere exist. *Willis v. Westin Hotel Company,* 651 F.Supp. 598, 601 (S.D.N.Y. 1986). For diversity purposes, the relevant date in determining a party's domicile is the date on which the complaint was filed—actions subsequent to that date, such as changing addresses or moving residences, are inconsequential. *Mollan v. Torrance,* 9 Wheat. 537, 22 U.S. 537, 539, 6 L.Ed. 154 (1824); *Linardos,* 157 F.3d at 947.

## II. Analysis

Although Hodgkins was a long-time resident of Poughkeepsie, New York, the relevant evidence shows that he moved to Connecticut in November 1997 upon separating from his former wife, and continues to live in that state. Hodgkins initially entered into a 14–month lease for an apartment in Danbury, Connecticut and then rented a condominium in Danbury for one year after the first lease expired. In January 2000, Hodgkins purchased a home in Newtown, Connecticut. Pursuant to a February 1998 separation agreement and an April 1999 divorce decree, Hodgkins transferred his interests in the New York home to his ex-wife, and he currently owns no property in New York, other than half of a vacant lot near his former home and an office space for his insurance business, which is located at 316 Main Mall, Poughkeepsie, New York.

Plaintiffs contend that Hodgkins' connections to Connecticut do not demonstrate the necessary intent to make Connecticut his permanent home. In support of this contention, plaintiffs rely heavily upon a laundry list of documentary items—including insurance applications, personal insurance licenses, a voter registration card, tax returns, car registration, personal checks and legal documentation in connection with his divorce—which on their face indicate a New York address, generally his business address. Plaintiffs contend that these documents show that Hodgkins never intended to change his citizenship, and that he desired to maintain his New York residence. The Court has reviewed all of the evidence presented by plaintiffs in this regard, and remains unpersuaded.[1]

As an initial matter, when the place of actual residence is clear, it is typically unnecessary for the Court to inquire as to a party's intent to remain in the new state. *See Willis,* 651 F.Supp. at 601 ("An individual's residence at the time a lawsuit is commenced provides *prima facie* evidence of his domicile."); *see also Brignoli v. Balch, Hardy & Scheinman,* 696 F.Supp. 37, 41 (S.D.N.Y.1988). Here, the facts

---

1. Much of plaintiffs' documentary evidence purporting to prove that Hodgkins' intended to remain a New York citizen is inapposite. Many items relate to periods of time that precede the date the complaint was filed—July 20, 1999—often by more than a year. Moreover, although Hodgkins listed his office as his residence from time to time on documents such as his car registration and license applications—which was sometimes done for business purposes—it is not seriously contended that he lived in his office. Furthermore, the voter registration card appeared to be signed years earlier, and was either never canceled or simply had not yet expired.

clearly establish that Hodgkins has been residing in Connecticut for almost the past three years, including on the date that the complaint was filed. Hodgkins' uninterrupted residence in Connecticut since 1997 establishes his citizenship.

Even if it were necessary to visit the issue of intent, the facts adduced at the hearing—which were essentially uncontested—support Hodgkins' testimony, which this Court credits, that he intended to, and did, change his domicile to Connecticut well before July 20, 1999. When Hodgkins moved to Danbury, Connecticut after separating from his wife in November 1997, he moved all of his personal belongings out of his New York home and into his Connecticut apartment. In January 1999, Hodgkins signed a lease for one year for a condominium at 4 Driftway Road in Danbury, where he lived when the complaint was filed. He received all of his daily personal correspondences—personal mail, utility bills, phone bills, phone service, cable bills and cable service—at that location.

Powerful proof of Hodgkins' intent to leave New York for a Connecticut domicile is supplied by the fact that he voluntarily agreed to relinquish his former home in Poughkeepsie—Hodgkins' only New York residence—to his ex-wife, first in February 1998 pursuant to the separation agreement, and again in April 1999 when the divorce was finalized. By the time the complaint was filed in July 1999, Hodgkins was completely divorced from his wife, had been living continuously in Connecticut for almost two years, and had deliberately surrendered his interest in the only New York property which could realistically be considered a residence.[2]

Accordingly, the Court finds that Hodgkins was a citizen of Connecticut at the time the complaint was filed. As a consequence, complete diversity does not exist, and this Court lacks subject matter jurisdiction.

### CONCLUSION

The defendants' motion to dismiss is granted. The Clerk of the Court is directed to enter judgment dismissing the complaint.

SO ORDERED:

---

2.  Plaintiffs' reliance upon Hodgkins' failure to completely deny ¶ 8 of the complaint alleging that "Hodgkins [was] a resident and citizen of the state of New York" only goes so far. First, it is well established—and plaintiffs concede—that the requirements of subject matter jurisdiction cannot be waived by the parties. *See United Food & Commercial Workers v. CenterMark Properties,* 30 F.3d 298, 303 (2d Cir.1994) ("Litigants, therefore, cannot waive subject matter jurisdiction by express consent, conduct or estoppel because they 'fail[ ] to challenged jurisdiction early in the proceedings.' ") (citation omitted); 13 Wright & Miller § 3522 at 67–68 ("the subject matter jurisdiction of the federal courts is too basic a concern to the judicial system to be left to the whims and tactical concerns of the litigants."). Second, to the extent such a failure purports to provide some proof of Hodgkins' intent to remain a New York citizen, such proof pales in comparison to the substantial contrary evidence discussed above.