S. Samuel Di Falco, S.
This proceeding was initiated upon the petition of the executors for the purpose of determining whether decedent at the time of his death was domiciled in New York or Connecticut. A stipulation of facts has been submitted to the court.
In 1932 decedent married the respondent in the State of Illinois. Shortly thereafter they moved to New York. It is conceded that from 1932 to 1943 the decedent and his wife were domiciled in New York. During that period they resided in several different hotels and apartments in New York City. Between 1936 and 1943, they rented a Summer home in Connecticut, and spent the Summer months there. In 1943 the decedent’s wife purchased a home in Connecticut. The decedent advised her that he did not wish to leave New York. Consequently his wife purchased a home in Lyme, Connecticut, using her own personal funds. The decedent, on the other hand, leased a studio apartment on East 62nd Street, consisting of a dining room, kitchen, pantry, living room and three bedrooms. Except for a piano, several paintings and some personal effects of the decedent, the furniture in the New York apartment belonged to the wife. Decedent was a composer of music. Evidently he was more active in that field prior to 1943, and in the years following 1943 he appears to have published no new compositions. It is conceded that he did most of his work of composing in New York City. The decedent had no other occupation.
During the period from 1943 up to the time of his death in 1958, decedent annually made an average of seven or eight trips a year to Connecticut. These trips usually occurred during the Summer months or on holiday week ends throughout the year. Generally he would leave New York on Friday and return on Tuesday although he occasionally stayed for a longer period. However, he never stayed more than a week at a time. Decedent’s wife spent most of her time in Connecticut, but she visited the decedent on an average of three times a month in his New York apartment. She usually stayed two or three days on each visit.
In various wills and codicils executed by the decedent, he described himself as a resident of the Town of Lyme in the State *29 of Connecticut. Several of the instruments, including the "will and codicil admitted to probate, speak of the Town of Lyme as located in New Haven County, although in point of fact it was located in New London County at the time of the execution of these instruments. The error is perhaps explained by the fact that the decedent had consulted Ohio counsel with respect to the preparation of these documents. Decedent was a registered voter in the Town of Lyme, Connecticut, and he last voted there in the general election of 1954. He never voted in New York. In 1957 the decedent and his wife filed a joint tangible personal property tax return in the Town of Lyme, listing, among other assets, decedent’s automobile. The car was registered in Connecticut and decedent maintained a Connecticut operator’s license. It appears that on each occasion when he discussed his will and codicil with Ohio counsel, decedent stated that he lived in the Town of Lyme, Connecticut.
Except for the trips to Connecticut referred to above and an occasional visit to his sister’s home in Ohio, decedent spent the remaining time at his apartment in New York City. He was a member of the American Society of Composers, Authors and Publishers and is listed on their records as residing in New York. He maintained all of his bank and brokerage accounts in New York City. His doctors and dentists were all in New York City. His insurance broker is a New York firm.
It is undisputed that decedent was domiciled in New York from 1932 to 1943. This domicile continues until a new one is acquired. (Bestatement, Conflict of Laws, § 23.) The burden rests upon the party asserting a change of domicile to establish that a change has in fact taken place. In Matter of Trowbridge (266 N. Y. 283, 289) the court said: 111 A change of domicile may be made ° ° for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person affected confirm the intention. * * * While acts speak louder than words, the words are to be heard for what they are worth.’ ” In Matter of Newcomb (192 N. Y. 238, 251) it was stated: “ There must be a present, definite and honest purpose to give up the old and take up the new place as the domicile of the person whose status is under consideration. * ° * Motives are immaterial, except as they indicate intention. A change of domicile may be made through caprice, whim, or fancy, for business, health or pleasure to secure a change of climate, or a change of laws, or for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person affected confirm the intention.”
*30 ‘ ‘ Residence in fact, coupled with the purpose to make the place of residence one’s home, are the essential elements of domicile. * 8 * While one’s statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there. 888 the actual fact as to the place of residence and decedent’s real attitude and intention with respect to it as disclosed by his entire course of conduct are the controlling factors in ascertaining his domicile.” (Texas v. Florida, 306 U. S. 398, 424-425.)
Tested by these principles, it is clear that decedent’s home and only place of actual residence during all these years was in the City of New York. The purchase of a home in Connecticut by his wife did not in any way change his mode of life. Indeed, it clearly appears that the purchase was made by his wife because the decedent himself refused to make the change. The attachments and ties that bound decedent to his true home and his New York apartment were never broken. There was no change in the mode of life of decedent; he continued to reside in the apartment in New York; his wife would visit him and do the shopping and some household chores. Prior to his wife’s purchase of the Connecticut property, he had vacationed in that State and, following the purchase, his visits there were no more extensive. The fact that an automobile, used only in Connecticut, was registered in that State is self-explanatory.
Moreover, the decedent’s prediliction for New York continued right up to the time of his death. In a communication dated March 11, 1958 to his sister, about two weeks before his death, he stated that he was preparing to sign an application for a penthouse. In a later postcard decedent is quoted as saying: ‘‘I 'im making and signing an application for my lease of penthouse at 10:30 a.m. tomorrow. New address will be 40 East 89th Street.”
The written declarations of decedent as to his residence after 1943 are, it is true, conflicting. There are as many instances where decedent claimed he was a resident of New York as those where he claimed residence in Connecticut. His voting in Connecticut four years prior to his death, is a fact not to be disregarded, but it is not of itself controlling. (Matter of Lydig, 191 App. Div. 117, 121.) All of his acts and declarations must be taken into account but the final question is where in point of actual fact did decedent have his principal home. The entire record makes it clear that decedent’s actual residence at all times was and remained in the County of New York. The court finds that New York was, and until his death, remained his domicile.