**In re Suzanne FRAME a/k/a Suzanne De Lyon, Debtor.**

**Bankruptcy No. 90–B–10671 (PA).**

United States Bankruptcy Court,
S.D. New York.

Oct. 16, 1990.

Nutovic & Weinberger[1], New York City for debtor.

Haight, Gardner, Poor & Havens[2] by Jon Yard Arnason, New York City, for Allan James, et al.

J. Douglas Sutter,[3] Griggs & Harrison, Houston, Tex., for Allan James, et al.

### MEMORANDUM DECISION GRANTING MOTION TO TRANSFER VENUE

PRUDENCE B. ABRAM, Bankruptcy Judge.

On March 2 of this year at 4:47 p.m., this case was commenced when Suzanne Frame a/k/a Suzanne de Lyon (the "Debtor") filed a voluntary Chapter 11 petition. Minutes thereafter, at 4:54 p.m., a voluntary Chapter 11 petition was filed by Suzanne de Lyon, Inc. a/k/a SDL, Inc. a/k/a Suzanne de Lyon, Inc. U.S.A. ("SDL" or the "Corporate Debtor"), a corporation of which the Debtor is a major shareholder.

Certain alleged creditors[4] of the Debtor and the Corporate Debtor have moved to transfer venue of the two cases to the Bankruptcy Court for the Southern District

---

1. On September 17, 1990, the court granted counsel's motion for leave to withdraw without objection from the Debtor.

2. Counsel for Allan James et al. was also permitted to withdraw recently.

3. *See* Footnote 2.

4. The movants are the so-called Allan James Group. The Allan James Group has been engaged in litigation with the Debtor, her husband and a number of corporations affiliated with them, including SDL, for several years in the United States District Court for the Southern District of Texas, Civil Action No. H–86–4589.

The persons making up the Allan James Group allege that they invested millions of dollars through the Debtor and the corporate defendants, that the monies were not returned as promised and that the Debtor and the corporations have not adequately explained their inability to return the monies or to account for what was done with them. Securities fraud and RICO claims have also been asserted.

In February 1989, the Allan James Group obtained an order appointing a receiver for the Debtor the corporate defendants because of ongoing discovery problems. The receiver, Harold May (the "Receiver"), filed a report in which he stated that SDL and the Debtor could not survive financially under a receivership. The Receiver's appointment for SDL and the Debtor was terminated by order entered March 31, 1989. Apparently SDL is the only one of the corporate defendants known to have any assets.

The Debtor has vigorously disputed the allegations of fraud and impropriety made by the Allan James Group. The Debtor's usury defense to enforcement of a similar investment has been upheld by the Fifth Circuit since the hearing on the venue motion. *See Najarro v. SASI Int'l, Ltd.,* 904 F.2d 1002 (5th Cir.1990).

In addition to making the venue motion, the Allan James Group sought relief from the automatic stay so that the Texas action could proceed to trial. That motion was denied by this court.

of Texas (the "Texas Bankruptcy Court") on the grounds that venue is not proper in this district and, alternatively, if venue is proper, venue should be transferred for the convenience of creditors and in the interests of justice. Two judgment creditors, Armando Fong Najarro and Compania Financiera, have joined in the venue motion.

The Debtor has opposed both prongs of the motion and has maintained that venue is properly laid here and the case should remain here. Although a partially consolidated trial was held, separate opinions on the venue motion will be issued in each case as no order has been signed consolidating this case with that of the corporate Debtor providing for joint administration of the two cases.

Based on the findings of fact which follow and for the reasons set forth below, the court finds venue is not properly laid in this district and grants the motion to transfer venue of this case to the Texas Bankruptcy Court.

## STATEMENT OF FACTS

To determine whether venue in this district is proper, the relevant facts are those for the 180 day period preceding the filing of the Debtor's petition, i.e., the period from September 3, 1989 to March 1, 1990 (the "Venue Period"). The Debtor's petition states that her mailing address is 106 Central Park South,[5] New York City. The petition further states that venue is proper in this district because the Debtor has resided in this district for the past 180 days and because this case is related to the SDL case.

Debtor's counsel has stated that it was through error that this case was filed prior to the SDL case and that counsel intended that the Debtor's petition would be filed second. The Debtor and SDL are represented by separate counsel and it appears that a coordination failure occurred by reason of the late hour and the imminent closing of the filing window in the Clerk's office.

The Debtor, who moved to Texas from Pennsylvania in 1983, has been living apart from her husband since prior to 1989. She and/or her husband own a house in a Houston, Texas suburb (the "Texas House") in which the Debtor made her home until late June 1989.

In late June 1989 the Texas House was burglarized. Most of the personal property and furnishings in the Texas House were stolen. The value of the property stolen has been estimated at $90,000 to $100,000. As a result of the burglary, the Debtor no longer wished to live in the Texas House. She therefore leased a two-bedroom apartment at 5150 Hidalgo Street in Houston (the "Houston Apartment") and moved in what furniture and personal effects remained.[6]

The Debtor spent 83 days in Houston and 70 days in New York during the Venue Period according to the court's analysis of the Debtor's monthly calendars which were placed into evidence at the trial on this motion. In making its calculation, the court has counted any day on which the Debtor traveled from one place to another as a day in the city of origin.[7]

During the vast majority of the 83 days the Debtor spent in Houston in the Venue Period, the Debtor was engaged in reviewing documents and participating in discovery related to various litigations pending against her in the state and federal

---

5. The petition actually says Central Park *West.* The court accepts the Debtor's representation that this was a typographical error and the petition should have said 106 Central Park *South.*

6. After the petition was filed and at the end of March 1990, the Debtor informally terminated the Houston Apartment lease by vacating the apartment and moving her furniture into storage.

7. The court is of the opinion that the Debtor's time away from both residences while on personal and business travel should not be counted in the total for either residence, regardless of the purpose of a particular journey or where it began or ended. The destination of her departure and return appears to have been dictated solely by the pragmatics of her travel needs. At least in a case like this one in which the Debtor travelled frequently between the two residences, the Debtor can be said to have been equally away from both residences while travelling.

courts in Texas. She testified that her involvement with the Houston office of SDL was minimal during these trips. While in Houston, the Debtor stayed in the Houston Apartment. The one-year lease for the Houston Apartment was signed by the Debtor in her individual capacity and provided for rent of $1,250.00 per month.

During the 70 days of the Venue Period that the Debtor was in New York, she stayed at 106 Central Park South, the address given in her petition, in a two-bedroom apartment leased by the Corporate Debtor (the "New York Apartment"). The Debtor had stayed in the New York Apartment on numerous occasions prior to the Venue Period.

SDL first leased the New York Apartment effective September 1, 1988 on a one year lease which was renewed for an additional year effective September 1, 1989. The Debtor testified that SDL leased the New York apartment to reduce the expense of her trips to New York. Prior to leasing the New York apartment, SDL rented a suite in a New York hotel at $800—$1,000 per night when the Debtor came to New York to transact SDL's business in order for her to have a place to stay and to meet with suppliers, bankers and customers. All of the furniture in the New York Apartment was leased by the Corporate Debtor and the $5,000 per month rent was paid by SDL.

Throughout the Venue Period, when the Debtor resided in the New York Apartment, the Debtor itemized her daily expenses for breakfast, lunch and dinner and her travel expenses for plane fare and taxi and limousine service as business expenses for which she received reimbursement from SDL. She did not itemize her daily expenses or seek reimbursement from SDL while residing in the Houston Apartment. The Debtor paid the rent for the Houston apartment from her personal checking account.

The Debtor spent a total of 153 days of the 180 day Venue Period in New York City and Houston. In each of September and November the Debtor spent three weeks in Texas and only one week in New York. In October the Debtor spent one week in Texas and two weeks in New York. In each of December and January the Debtor spent slightly over two weeks in Texas and a week and a half in New York. The Debtor spent Thanksgiving in Mexico. She spent the first three days of the Christmas and New Year's holiday in Maryland and the balance through January 9 in New York. In February the Debtor spent just over three weeks in New York and only two days in Texas. The Debtor spent the remaining 27 days of the Venue Period in Europe (19 days) (two business trips), Mexico (5 days) and Maryland (3 days) (both personal trips).

Throughout the Venue Period, the Debtor owned no real property in New York and held no leasehold interest in her individual name in New York. In her responses made in mid–1989 to interrogatories in various Texas litigations, the Debtor identified the Texas House as a homestead. As late as November of 1989, the Debtor had discussions with the Receiver[8] relative to the Texas House and the insurance claim for the theft in which she indicated an intention to avail herself of a homestead exemption which could be claimed only if Texas were her primary residence. However, there was no homestead exemption filing made by the Debtor.

According to the Receiver, the Debtor used two automobiles with Texas license plates during the Venue Period. The Receiver maintained frequent contact with the Debtor during Fall 1989. His first recollection of speaking to her when she was in New York, as opposed to Houston, is a telephone call in December 1989. The Receiver testified that he had no reason to know where she was in January and February 1990.

The Debtor registered to vote in New York City in September or October 1989 but she did not vote in any New York election during the Venue Period. The Debtor did not vote in Houston after June 1989. The Debtor had a safe deposit box in

---

**8.** *See* Footnote 4.

Houston until March 1990 and did not have a box in New York City.

The Debtor testified that in 1989 she determined to leave Houston and not have it as her personal residence because "lots of unpleasant things" involving her were happening in Houston. The unpleasant things she itemized were an Internal Revenue Service audit that began a year and a half before this case was commenced and two articles which appeared in the Houston press in May and August 1989 which she regarded as sufficiently derogatory to her character that she commenced a libel suit against the newspaper in which they appeared. The Debtor testified that she has personal social connections in New York and spends leisure time here. At the April 1990 hearing on this motion, the Debtor testified that she had not been in Houston at all during the prior six weeks.

## DISCUSSION

By virtue of Bankruptcy Rule 1014(a)(2), the court may not retain an improperly venued case and must either transfer the case or dismiss it. It is therefore necessary to determine whether venue of this case is properly laid in this district.

The governing statute is 28 U.S.C. § 1408 which states:

"Except as provided in Section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one hundred and eighty day period than the domicile, residence, or principal place of business in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under Title 11 concerning such person's affiliate, general partner, or partnership."

Venue of this case in this district cannot be predicated on the affiliate venue provision found in subsection (2) of § 1408 because there was no case pending for any affiliate of the Debtor at the time her petition was filed. The court holds that the phrase "is pending" found in subsection (2) must be interpreted to mean is pending at the actual moment a debtor files a petition. This literal reading provides certainty and predictability in the application of the subsection and is consistent with the apparent purpose of the statute.

Whether venue of this case in this district is proper must be determined solely by reference to subsection (1) of § 1408. Subsection (1) specifies four grounds for venue: domicile, residence, principal place of business in the United States and principal assets in the United States. The facts of this case preclude use of either the principal place of business or principal assets grounds to sustain venue in this district. Thus, to determine whether venue is proper in this district, the court must look at the Debtor's domicile and residence.

Subsection (1) of § 1408 requires that a debtor have a domicile or residence within the district for the 180 days immediately preceding the filing of the petition *or for a longer portion of the 180 day period than the domicile or residence of the debtor was located in any other district.* If a debtor did not have a single place of domicile (or residence, as the case may be) throughout the relevant period, the court must look at all of the debtor's domiciles (or residences) and determine in which the Debtor was longer in order to determine whether venue is proper.

"Domicile" and "residence" are not used as synonyms in § 1408. *See 3 Collier on Bankruptcy (15th Ed.),* ¶ 3.02 at 3–125. *Compare Antone v. General Motors Corp.,* 64 N.Y.2d 20, 484 N.Y.S.2d 514, 518, 473 N.E.2d 742, 746 (1984) (Interpreting New York CPLR). The term "domicile" is defined generally as residence in fact along with the intent to remain there or to return when absent. *See Willis v. Westin Hotel Co.,* 651 F.Supp. 598, 601 (S.D.N.Y.1986)

("*Willis*") and *In re Estate of Whithorne*, 29 Misc.2d 27, 211 N.Y.S.2d 530, 532 (Surr. Ct.N.Y.Cty.1961) ("Whithorne"). The question of domicile is a mixed question of fact and law which must be determined by the court after a review of the evidence. *See In re Estate of Gadway*, 123 A.D.2d 83, 510 N.Y.S.2d 737, 739 (3d Dept.1987) ("*Gadway*"). The pertinent evidence is the totality of a person's contacts with a state and his intent to remain there. *See Willis*, 651 F.Supp. at 601; *In re Wilson*, 62 B.R. 43, 44 (E.D.Tenn.1985) ("*Wilson*") (Bankruptcy court required to make factual finding on issue of debtor's domicile in order to determine proper venue based on evidence of debtor's intent and overt acts manifesting this intent.)

Once established, a domicile continues until a new one is acquired. *See Whithorne*, 211 N.Y.S.2d at 531. Although any United States citizen residing in the United States always has a domicile in some state, a person may only have one domicile at a time. *See Willis*, 651 F.Supp. at 603. In contrast, a person may have several residences at the same time. *See In re Watson*, 99 F.Supp. 49, 53 (W.D.Ark. 1951). A person can change residences at will but a domicile, once established, remains until a new domicile is established. *See Broadstone Realty Corp. v. Evans*, 213 F.Supp. 261 (S.D.N.Y.1962) ("*Broadstone*"). Actual residence is not necessary to preserve a domicile once a domicile has been acquired. *See Willis* and *In re Will of Brown*, 132 Misc.2d 811, 505 N.Y.S.2d 334 (Surr.Ct. Kings Co.1986) ("*Brown*"). It has been held that when a decedent has two residences, the earlier in time remains the individual's domicile until a clear intention to change is established. *See Gadway*, 510 N.Y.S.2d at 739. The party asserting a change of domicile has the burden of proof on that issue. *See Whithorne*, 211 N.Y. S.2d 530; *Wilson*, 62 B.R. 43, 44; and *Willis*, 651 F.Supp. at 603. Although an important factor, voting and registration to vote are insufficient standing alone to warrant a finding of domicile. *See Gadway*, 510 N.Y.S.2d at 739; *Whithorne*, 211 N.Y. S.2d at 532; and *Broadstone*, 213 F.Supp. at 265.

Residence, when used in a sense other than domicile, is one of the most nebulous terms in the legal dictionary and can have many different meanings depending on the context in which it is used. *See Corwin Consultants v. Interpublic Group of Cos.*, 512 F.2d 605, 609–610 (2d Cir.1975). Residence is less inclusive than domicile, importing merely having an abode at a particular place which may be one of any number of such places at which one is, at least from time to time, physically present. *See Brown*, 505 N.Y.S.2d at 337. For venue purposes residence has been held to mean a permanent residence, one's home, as distinguished from a mere stopping place for the transaction of either business or pleasure. *See Konigsberg v. Long Island Daily Press Publishing Co.*, 57 Misc.2d 911, 293 N.Y.S.2d 861, 862 (Sup.Ct. Queens Cty.1968). The mere bodily presence of a person in a place by no means makes that place his residence for the purposes of venue. *See In re Carnera*, 6 F.Supp. 267 (S.D.N.Y.1933) (Decided under former Bankruptcy Act) (Italian pugilist held merely temporary visitor to United States and not a resident). *See generally*, Reese and Green, That Elusive Word, "Residence," 6 Vand.L.Rev. 561 (1953).

The day totalling method used by the court carries the implicit assumption that the Debtor had two residences. A two-residence scenario is the most favorable view of the facts available to the Debtor. It is undisputed that she maintained a residence in Texas throughout the Venue Period, whether or not that was her domicile. There is no dispute that until the burglary of the Texas House in mid–1989 the Debtor was domiciled in Texas. The Debtor asserts that she thereafter changed her domicile to this district. Thus, the issue to be determined is whether the Debtor also had a qualifying residence and/or domicile in New York.

The Debtor points to her registration to vote in New York early in the Venue Period as the primary objective evidence of her change in domicile. A number of other facts must be weighed against the

voting registration evidence in order to determine the Debtor's domicile. The most significant other fact is that the Debtor returned to her Houston Apartment on a regular basis up until at least as late December 1989. The Debtor's domiciliary intent can also be found from the facts that the Debtor maintained no personalty other than clothing in New York; did not personally lease or purchase any real property in New York; did not personally pay for her lodgings while in New York; and continued to seek reimbursement from the Corporate Debtor for her daily and travel expenses while in New York in the same manner as she had prior to the Venue Period when she was concededly domiciled in Texas. The court concludes that the Debtor remained domiciled in Texas until at least the end of December 1989 and she was therefore domiciled in Texas for the greater portion of the Venue Period.

As venue in this district cannot be predicated on domicile, the court must next consider whether this is a proper venue based on residence. Although a person may have multiple residences simultaneously, only one of those residences can qualify for the purpose of establishing venue under 28 U.S.C. § 1408(1) because of the "longer than" requirement.

 The Debtor spent the longer time (83 days) at her Houston residence and that is her only qualifying residence for venue purposes under 28 U.S.C. § 1408(1). Thus, whether the Debtor also had a residence in New York need not be decided. *Compare In re MacDonald*, 73 B.R. 254, 255 (Bankr. N.D.Ohio 1987) (Debtor's claim of domicile in district assumed because court determined to transfer venue based on location of residence, assets and business).

Having found that venue is not proper in this district, the court must determine whether to dismiss this case or transfer it to the Texas Bankruptcy Court.[9] This court is satisfied that transfer of the case is the appropriate choice. The Texas Bankruptcy Court is an appropriate venue. The aggregate of the Debtor's debts significantly exceeds her known assets. Several complaints objecting to dischargeability have been filed. Transfer of this case preserves the original filing date. It is in the interest of justice and for the convenience of the parties to transfer the case rather than dismiss it. To the extent that the success of the Corporate Debtor's case depends on the Debtor's heavy personal involvement in the next few months, the administration of this case in the Texas Bankruptcy Court can be coordinated with this court's administration of the Corporate Debtor's case.

A separate order transferring this case to the Texas Bankruptcy Court is being signed contemporaneously herewith.

---

**9.** Had the court found that venue in this district was proper, it would have had to proceed to consider whether venue should be transferred to the Texas Bankruptcy Court. *See In re Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239 (5th Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980).

A number of factors favor a Texas venue. The Debtor has personal and real property in Texas as to which conflicting claims have been made. The Debtor's creditors are principally located in Texas. The necessary witnesses are located primarily in Texas. The three dischargeability complaints which have been filed involve Texas-based transactions and pre-petition litigation. *See Allan James, et al. v. Frame,* (Adversary Proc. No. 90–6152A); *Armando Fong Najarro and Compania Financiera Libano, S.A. v. Debtor,* (Adversary Proc. No. 90–6169A); *Federal Deposit Insurance Company as Receiver for Southwest National Bank v. Debtor,* Adversary Proc. No. 90–6213A.